UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| BACKPAGE.COM, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  17-CV-1951 |
| v. | ) | |
| | ) | |
| JOSHUA D. HAWLEY, in his official | ) | |
| capacity as Attorney General of the | ) | |
| State of Missouri, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

### INTRODUCTION

1.     This is an action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, to enjoin and declare unlawful actions of Missouri Attorney General Joshua Hawley that violate the U.S. Constitution and federal law.

2.     A federal law enacted in 1996—Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230" or "CDA")—prohibits all state-law civil or criminal claims against Internet websites and publishers such as Plaintiff Backpage.com based on content created by third parties.  Considered the most important law in the country protecting free speech online and fostering development of the Internet unfettered by government interference or regulation (as Congress expressly intended), Section 230 has been applied in over 300 cases to hold websites immune and state laws preempted.

3.     State officials and others have publicly castigated and attacked online classified advertising services—first Craigslist and then Backpage.com—for providing forums that permit adult-oriented ads, notwithstanding that they are the online equivalents of escort and dating ads

1

that have appeared in newspapers and other publications for decades.  No fewer than seven courts have held that claims against Backpage.com are barred by Section 230 and the First Amendment, and courts have struck down *every effort* by state and local authorities to censor or shut down the website by way of legislation, regulation, or threatened investigation or sanctions.

4.     The Attorney General is well aware that federal law precludes the State from pursuing Backpage.com.  Attorney General Koster admitted four years ago that Section 230 bars civil claims or criminal charges by the State against Backpage.com.

5.     Nonetheless, despite the established law, Attorney General Hawley devised a new approach with the avowed purpose to "shut down" Backpage.com by using investigative powers and threatening civil and criminal penalties under the Missouri Merchandising Practices Act, RSMo. § 407.010, *et seq*. ("MMPA").[1]  Attorney General Hawley has initiated an invasive investigation of Backpage.com based on third-party content it publishes, issuing an enormously broad civil investigative demand ("CID") to Backpage.com and its CEO, demanding over seven years' worth of documents encompassing essentially all business operations of the company; its ownership, organization and personnel; financial records and revenues; efforts to screen and block content; adult ads posted in Missouri; and much more.[2]

6.     The Attorney General is misusing the MMPA to burden, harass and inhibit First Amendment-protected communications.  Indeed, the MMPA itself specifically recognizes that liability under the act should rest with the third parties who advertise, and *not* with the publishers that distribute the ads, *see* RSMo. § 407.020.2(1) (MMPA exemption for publishers as to

---

[1] Jo Mannies, "Missouri AG Hawley looking for state court's help in going after alleged sex-trafficking website," St. Louis Public Radio (June 15, 2017), http://news.stlpublicradio.org/post/missouri-ag-hawley-looking-state-court-s-help-going-after-alleged-sex-trafficking-website#stream/0.

[2] The CID is attached hereto as Exhibit A.

advertisements they carry), and, in so doing, reflects long-established constitutional principles of *mens rea* for any claims against parties that publish or distribute speech.

7.      Given that the Attorney General's office is absolutely barred by Section 230 from pursuing civil claims or prosecuting Backpage.com under the MMPA or other state laws for ads the website publishes, it is likewise barred from pursuing a harassing investigation about such barred (and meritless) claims.  Even if that were not the case, the Attorney General's threats and CID also violate First Amendment prohibitions on government censorship and interference with publishers' editorial judgments.  The CID also constitutes an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments.  The Attorney General's investigation and CID should be enjoined as a blatant infringement of free speech rights and federal law.

## PARTIES

8.      Plaintiff Backpage.com, LLC is a limited liability company, organized and existing under the laws of the state of Delaware, with its principal place of business in Dallas, Texas.

9.      In this action, Backpage.com challenges the Attorney General's actions, investigation and CID on behalf of persons and entities identified as "Subjects" in the CID, including Carl Ferrer (the CEO of Backpage.com), James Larkin and Michael Lacey (who previously held indirect ownership interests in Backpage.com's former parent company), Camarillo Holdings LLC and affiliated entities "and agents thereof."  *See* CID at 1, 2 ¶¶ 4, 5.[3]

---

[3] The CID also identifies as a "Subject" New Times Media LLC, which was the former parent company of several weekly newspapers and Backpage.com, LLC.  Camarillo Holdings LLC (formerly known as Village Voice Media Holdings, LLC) sold New Times Media LLC and its newspaper business in 2013.  Undersigned counsel represents the interests of all "Subjects" of the CID (to the extent they can be discerned) except for New Times Media LLC.

10.     Defendant Joshua D. Hawley is the Attorney General of the State of Missouri, and is sued in his official capacity as the chief law enforcement officer of the State.

## JURISDICTION AND VENUE

11.     This action arises under the United States Constitution, particularly the First, Fourth, Fifth and Fourteenth Amendments, as well as the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988, and the Communications Decency Act, 47 U.S.C. § 230.

12.     This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

13.     This Court has authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, because the action presents an actual case or controversy within the Court's jurisdiction.

14.     This Court has authority to issue the requested injunctive relief pursuant to 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 65.

15.     This Court has authority to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because events giving rise to the claims occurred within this District.

## FACTUAL ALLEGATIONS

**A.     Background Regarding Backpage.com.**

17.     Backpage.com is an online classified advertising service, located at the URL www.backpage.com.  Backpage.com began publishing and providing services in 2004.

18.     Backpage.com is available to users throughout the United States.  The website is organized geographically by states and municipalities.  In Missouri, users can post and review

4

ads for St. Louis, Kansas City, Springfield, Columbia/Jefferson City, and other regions of the state.[4]

19.     Backpage.com users post over six million ads every month.  Backpage.com is the second-largest classified ad website in the United States, after Craigslist.

20.     Users of Backpage.com may post and review ads in a number of categories, *e.g*., local places, community, buy/sell/trade, automotive, rentals, real estate, jobs, dating, and services.  Until January 2017, Backpage.com had a category for "adult" services (including escort services).  Following years of pressure from government authorities—including a campaign by the Sheriff of Cook County, Illinois, that the Seventh Circuit described as an unconstitutional effort to "crush Backpage," *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015), *cert. denied* 137 S. Ct. 46 (2016)—Backpage.com shuttered the adult category on January 9, 2017.

21.     Individuals post on Backpage.com using an automated interface, providing all content for ads they post (*e.g*., titles, text and images).  Backpage.com does not dictate or require any content, although it does block and remove content that violates the website's rules or may be improper.  Until July 2015, the website charged for ads in the adult and dating categories, while users could post ads for free in other categories.  Since that time, users have been able to post ads at no charge in all categories on the website.

22.     Backpage.com prohibits illegal content and activity on its website and takes extensive steps to prevent such misuse, especially to guard against any form of trafficking or child exploitation.  These measures include:

---

[4] Backpage.com also provides classified advertising services through websites in other countries, although they are not at issue here.

a.      Terms of use and posting rules (including prohibitions on any ads for illegal services, nude or lewd photos, or posting "any material … that exploits minors in any way"), which all users must affirmatively accept.

b.      Providing links in every ad on the site for users to report ones they think may be improper (also emphasizing that concerns about any possible threat to a child should be reported to abuse@backpage.com), and making clear that any suspected child exploitation will be reported for law enforcement investigation.

c.      Providing links throughout the site to the Cybertipline of the National Center for Missing and Exploited Children ("NCMEC") and a User Safety page that addresses human trafficking.

d.      Taking extensive measures to police user posts, which have included using automated filters to scan and block ads based on potentially inappropriate or offensive terms (as well as blocked URLs and email or IP addresses) and employing a team of human moderators to manually review ads and block and remove those that violate the website's rules and policies or may be improper.

23.     Backpage.com routinely works with law enforcement officials, including by promptly responding to subpoenas; removing and blocking posts at the request of law enforcement officials; and providing evidence and testimony to support investigations and prosecutions of individuals.  Officials in Missouri and across the country have commended Backpage.com for its support and cooperation.

**B.      State Officials' Efforts to Censor Online Advertising and Backpage.com.**

24.     Various public officials have sought to eliminate adult-oriented online advertising for several years, first targeting Craigslist and then Backpage.com.

25.    For example, in 2010, a group of state attorneys general demanded that Craigslist shut down its section for adult services ads and, when Craigslist capitulated (though objecting that its website had been censored), less than two weeks later, several AGs turned their sights to Backpage.com and demanded that it "immediately" do the same (in a letter dated September 21, 2010).  But Backpage.com resisted these censorial efforts.

26.    The National Association of Attorneys General ("NAAG") continued the campaign to shut down Backpage.com, including another demand letter (dated August 31, 2011) and threats of investigation.  NAAG also formed a "Backpage Executive Committee" to consider ways to target the website.  In June 2014, this committee sent a memo to all other state attorneys general, circulating for sign-on a letter to Congress advocating amendment of Section 230 because federal courts had "broadly interpreted [Section 230] to provide criminal and civil immunity to internet content providers."  The committee's amendment proposed to "maintain[] civil immunity" but allow "state and local governments … the ability to criminally investigate whether [websites] and their management are culpable for aiding and abetting prostitution and other similar crimes."  In a letter dated July 23, 2013, the AGs urged Congress to amend Section 230 to exempt from immunity all state criminal laws, while again acknowledging that federal courts had interpreted the law to "prevent[] State and local law enforcement agencies from prosecuting" Backpage.com and demanding that "[t]his must change."  Notwithstanding the AGs' urging, Congress did not change Section 230.

27.    Former Attorney General Koster was a member of the NAAG Backpage Executive Committee and a signatory on the July 23, 2013  letter to Congress.  In both contexts, he acknowledged that Section 230 precluded the State from prosecuting or bringing civil claims against Backpage.com. *Google, Inc. v. Hood*, 96 F. Supp. 3d 584, 597-98 (S.D. Miss. 2015)

7

(finding the Mississippi attorney general's joinder in the July 23, 2013 letter an important factor in enjoining the AG's investigation and civil subpoena to Google purportedly under state consumer protection laws), *rev'd on procedural grounds*, 822 F.3d 212 (5th Cir. 2016).

### C.     Federal Courts Have Rejected Efforts of State Efforts to Censor or Impose Liability on Backpage.com.

28.     Federal courts have uniformly rejected efforts by state and local officials to censor or shut down online classified advertising and, more specifically, Backpage.com, holding that such efforts—whether by legislation, litigation, or threatened investigation and sanctions— violate the First Amendment and Section 230.

29.     In 2009, the Cook County Sheriff sued Craigslist, alleging the website's adult services category constituted a public nuisance and that "Craigslist itself violates criminal laws prohibiting prostitution and related offenses." *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 962-63, 967 (N.D. Ill. 2009).  The U.S. District Court for the Northern District of Illinois dismissed the suit, holding that Craigslist was immune from liability under Section 230. *Id.* at 967-69.  The court reasoned that online service providers do not "cause" postings except "in the sense of providing a place where people can post," and they "are not culpable for 'aiding and abetting' their customers who misuse their services to commit unlawful acts." *Id.* at 966, 968-69.

30.     In 2012, Washington State enacted a statute aimed at Backpage.com, creating a felony offense of "advertising commercial sexual abuse of a minor."  The U.S. District Court for the Western District of Washington enjoined the law, finding it likely unconstitutional under the First Amendment and contrary to and preempted by Section 230. *See Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012).  The court held escort ads are protected speech, and the state law seeking to impose criminal liability on websites for hosting third-party content would impermissibly chill speech and could not withstand strict scrutiny. *Id.* at 1282.

The court also held Section 230 preempts state criminal laws, and states cannot impose criminal penalties to create an incentive for online service providers *not* to monitor content, as that is "precisely the situation [Section 230] was enacted to remedy." *Id.* at 1272.  Subsequently, the Washington law was permanently enjoined and repealed.

31.     The states of Tennessee and New Jersey enacted similar criminal laws targeting Backpage.com, both of which were also struck down.  The U.S. District Court for the Middle District of Tennessee enjoined the Tennessee law, holding that it was unconstitutional and "directly at odds" with Section 230, and that state efforts to censor or chill an entire category of speech on a website fail because "when freedom of speech hangs in the balance—the state may not use a butcher knife on a problem that requires a scalpel to fix." *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 813, 825 (M.D. Tenn. 2013).  The U.S. District Court for the District of New Jersey likewise enjoined the law in that state as unconstitutional and in violation of Section 230.  *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at *8 (D.N.J. Aug. 20, 2013).

32.     After his failed suit against Craigslist, Cook County Sheriff Dart targeted Backpage.com.  When his demands and public condemnation failed, he decided to pursue an "out-of-the-box" approach to eliminate the website by pressuring MasterCard and Visa to disallow use of their cards on the site.  Backpage.com brought suit under 42 U.S.C. § 1983, asserting that the Sheriff's actions constituted an unconstitutional prior restraint under *Bantam Books v. Sullivan*, 372 U.S. 58 (1963).  The Seventh Circuit (in an opinion by Judge Posner), reversed the district court's denial of a preliminary injunction, holding that "a public official who tries to shut down an avenue of expression of ideas and opinions through 'actual or threatened imposition of government power or sanction' is violating the First Amendment." *Backpage.com,*

9

*LLC v. Dart*, 807 F.3d at 230 (quoting *Am. Family Ass'n, Inc. v. City & County of San Francisco,* 277 F.3d 1114, 1125 (9th Cir. 2002)).

33.     Federal courts—including this Court—have also uniformly rejected private parties' state-law claims attempting to impose liability on Backpage.com for third-party ads, holding that such claims are plainly foreclosed and preempted by Section 230.  In *M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041 (E.D. Mo. 2011) (Mummert, J.), the Court granted 12(b)(6) dismissal of a plaintiff's claims seeking to hold Backpage.com responsible for sex trafficking that she alleged took place after ads about her were posted on the website.  The Court rejected the plaintiff's arguments attempting to impose liability based on allegations Backpage.com knew or should have known ads on the site were for prostitution, accepted payments for such ads, and provided features and posting rules to aid "nefarious illegal prostitution activities."   809 F. Supp. 2d at 1044.  The Court held that Backpage.com was immune from all such claims under Section 230, the website could not be considered an aider and abettor of users who posted ads that led to illegal conduct or harm, and the plaintiff's challenges to Backpage.com's editorial practices directly contravened Congress' policy choice in Section 230.  *Id.* at 1053-54.

34.     More recently, in *Doe ex rel. Roe v. Backpage.com, LLC*, 104 F. Supp. 3d 149, 156 (D. Mass. 2015), *aff'd sub nom. Jane Doe No. 1 v. Backpage.com, LLC* 817 F.3d 12, (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017), the U.S. District Court for the District of Massachusetts and the First Circuit rejected claims against Backpage.com challenging the website's structure, rules and editorial practices, holding that such allegations could not "amount to … affirmative participation in an illegal venture,"104 F. Supp. 3d at 157, and impermissibly attacked publisher functions immunized by Section 230, regardless of whatever motivations the

plaintiffs sought to ascribe to Backpage.com's conduct, 817 F.3d at 21 ("The strictures of section 230(c) foreclose such suits."); *see also id*. at 22.

35.     Federal courts have also held that a state AG's investigation and burdensome document demands contravening Section 230 should be enjoined.  In *Google, Inc. v. Hood*, 96 F. Supp. 3d at 597-98, the U.S. District Court for the Southern District of Mississippi enjoined an investigation and civil subpoena issued by the Mississippi attorney general as part of his campaign to force Google to block websites and content, holding that the AG's attempts to use the state's consumer protection act to pursue Google violated Section 230, the First Amendment and the Fourth Amendment.

**D.     The Attorney General's Investigation and CID to Backpage.com are Unlawful and Not in Good Faith.**

36.     In April 2017, Attorney General Hawley announced that his office was pursuing a new, "first in the nation" initiative to use the State's consumer protection laws—the MMPA—ostensibly to address trafficking, but, more specifically as it has turned out, to pursue Backpage.com.[5]  In fact, the AG's approach is not new; the Mississippi AG tried the same tack and was enjoined by the court in *Google v. Hood*, 96 F.3d at 584, two years ago.

37.     Attorney General Hawley trumpeted his initiative and pursuit of Backpage.com in statements to the press *before* making any contact to Backpage.com.[6]  The AG also acknowledged in public statements that he is using the MMPA to avoid "more difficult"

---

[5] In connection with this initiative, Attorney General Hawley has also formed a new unit within the AG's office and proposed interpretive rules for the MMPA that would impose liability on persons who "directly or indirectly" advertise "any merchandise that constitutes or involves any commercial sexual conduct."  *See* Attorney General's Proposed Rule 15 CSR 60-16.040.

[6] *See* Celeste Bott, "Missouri attorney general to investigate Backpage with new human trafficking unity," ST. LOUIS POST-DISPATCH (May 9, 2017) (using the criminal laws "turns out to be more difficult" because such charges are "hard to … prove up"), http://www.stltoday.com/news/local/crime-and-courts/missouri-attorney-general-to-investigate-backpage-with-new-human-trafficking/article_1dda0fe2-6455-5236-9ae6-88645214eafd.html.

problems of having to satisfy criminal law standards.[7]  And, despite purporting to investigate

under the MMPA, AG Hawley has said his office is looking for "[a]ny violations of law we may

find [and] we can prosecute" by way of "[c]ivil and criminal penalties" against Backpage.com.[8]

38.     On May 10, 2017, the AG's office served the CID on Carl Ferrer, the CEO of

Backpage.com.  The CID states that the Attorney General seeks to "inquire into the activities of

Subjects in connection with the sale or advertisement, as defined in Section 407.010, RSMo, of

commercial sexual conduct, other sexually oriented services, massage services, dating services,

and other merchandise," to "determine whether the Subjects have used deception, fraud, false

promise, misrepresentation, unfair practice, or the concealment, suppression, or omission … in

connection with the sale or advertisement of … merchandise."  CID at 1.

39.     While the MMPA prohibits deceptive acts or practices by persons who sell or

advertise merchandise in or from the State of Missouri, RSMo. § 407.020, the CID gives no

indication of any advertisements or representations of Backpage.com that the AG purportedly is

investigating.  Third-party users who post on the website are advertisers, but Backpage.com is

not—it provides the online forum where users can post their ads.  The CID purports to

investigate Backpage.com for the content of users' ads (not for any advertisements or

representations Backpage.com ever made), and states that the AG is *not* investigating any users

who are the actual advertisers.  *See* CID ¶ 6 (stating that the CID does not seek information about

users who posted ads).

---

[7] Jordan Larimore, "Missouri AG's Effort to Combat Sex Trafficking Includes Investigation into Classified Advertising Website," JOPLIN GLOBE (May 24, 2016), http://www.govtech.com/internet/Missouri-AGs-Effort-to-Combat-Sex-Trafficking-Includes-Investigation-into-Classified-Advertising-Website.html.

[8] Bott, *supra* ("'Any violations of the law we may find, we can prosecute' Hawley said.  'Civil and criminal penalties are possible here.'").

40.     The CID demands the production of an extraordinarily broad scope of information, encompassing nearly all operations, policies and practices of Backpage.com for a seven-year period.  The twenty-four categories of documents are fully set forth in the CID (Exhibit A), but, to summarize, include all documents concerning:

a.      Ownership, management and organization of Backpage.com and any affiliated entities, including all officers and directors, and every employee or agent involved in screening content;

b.      All practices for reviewing, blocking, deleting, or modifying ads on the site;

c.      All efforts to review, verify, block, delete, disable, or flag user accounts;

d.      Posting rules and limitations, including error messages to users;

e.      Policies, manuals, training materials, and guidelines;

f.      Monthly and yearly counts for the last three years of all ads posted in the adult sections of the website, both for Missouri and nationally;

g.      Every adult-oriented posting that was blocked, deleted, or modified for any reason, along with copies of all such ads as originally submitted or published;

h.      Monthly and yearly counts of ads posted for the last three years in Missouri for several categories, including Massage, Services/Miscellaneous and Dating, and counts of the number of ads deleted or blocked for each category;

i.      Backpage.com's policies regarding data retention, metadata, and hashing of images;

j.      Backpage.com's annual revenue and profit for each of the past five years generally, and broken down for the Services/Massage, Services/Miscellaneous, and Dating categories; and

k.      Identification of all of Backpage.com's banks and account numbers;

41.      Responding to the CID would require Backpage.com to conduct a broad-ranging search and produce an enormous volume of data at great burden, expense, and disruption to its business and the services it provides to users.  The CID also demands vast amounts of information about lawful speech, as well as the company's actions and editorial practices to monitor, filter, and block content—all of which are expressly immunized by Section 230 and protected by the First Amendment.

42.      The return date set forth in the CID was June 7, 2017, but the AG's office agreed to an extension to July 7, 2017.  Backpage.com and Mr. Ferrer timely responded by that date.

43.      However, in the interim, on June 15, 2017, Attorney General Hawley announced via Twitter and in press statements that he had filed suit in state court "to force Backpage.com to stop stonewalling," despite the fact that the Attorney General's office had agreed no response to the CID was due until three weeks later.[9]

44.      Consistent with the tack of using the CID and the investigation for PR purposes, the Attorney General's office made no contact to Backpage.com or its counsel about the state-court petition, nor has it served the petition, but instead provided an advance copy of it and statements to the media, without mentioning the AG's prior extension agreement.[10]

45.      Counsel for Backpage.com contacted the AG's office, noting that the petition appeared to be an obvious mistake.  The AG's office responded that it had served a second copy of the CID a week after the extension agreement, and notwithstanding that the agreed extension

---

[9] *See* https://twitter.com/hawleymo?lang=en (June 15, 2017 tweet).

[10] *See* Mannies, *supra*.  The petition is filed in *State of Missouri v. Backpage.com, LLC*, No. 1711-CC00589 (Mo. 11th Judicial Circuit, St. Charles County).

applied to Backpage.com *and* Mr. Ferrer, the State asserted it could bring suit to compel responses from Backpage.com.

46.     Attorney General Hawley is attempting to use the MMPA and the CID to burden, censor, and shut down Backpage.com, despite knowing the State is precluded from pursuing civil claims or prosecuting Backpage.com for ads posted by third parties on the website.  Threatening sanctions or using coercive government powers in this way—when the State has no authority and no good faith basis to act—is unconstitutional censorship.

47.     That the Attorney General's investigation and the CID are not in good faith or related to any legitimate investigation is demonstrated by the AG's actions, including:

a.  The previous admissions of the Attorney General's office that Section 230 precludes the State from asserting claims against Backpage.com;

b.  The Attorney General's acknowledgement that the State is not investigating any representations or advertisements of Backpage.com under the MMPA, but instead is questioning ads posted by third-party users, in a search of civil and criminal claims to assert against Backpage.com;

c.  The Attorney General's disregard of RSMo. § 407.020.2(1), which expressly exempts publishers and their owners for claims of misrepresentations by third-party advertisers;

d.  The Attorney General's public statements that he is seeking to shut down Backpage.com, with the view that the MMPA provides an easier way to accomplish this censorial purpose without having to deal with the protections of criminal laws or constitutional proscriptions about actions infringing free speech rights;

e.  The actions of the Attorney General's office in connection with the CID, including its repeated statements to the press (before any contact to Backpage.com or good faith effort to address issues), its state-court petition to compel responses from Backpage.com when the State had agreed that responses were not yet due; and

f.  The Attorney General's office's statement that would it disclose all information to state and federal law enforcement agencies across the country (*see* CID at 1), notwithstanding that doing so would violate the MMPA, *see* RSMo. § 407.060 (information provided in response to CID may not be disclosed to third parties absent a court order).

**E.      Injury from the Attorney General's CID, Investigation and Threatened Prosecution.**

48.     As a result of the Attorney General's conduct, Backpage.com faces investigation and the threat of prosecution for hosting third-party content—conduct expressly protected by Section 230.  Unless injunctive relief is granted, the Attorney General's actions and threats will irreparably harm Backpage.com and its users by chilling protected speech rights.  Moreover, absent an injunction, Backpage.com will be subjected to unreasonable expense, undue burden, and harassment.

49.     Purporting to act under the color of state law, the Attorney General has subjected and continues to subject Backpage.com to the deprivation of rights, privileges, and immunities secured by the First, Fourth and Fifth Amendments of the United States Constitution (enforceable against the Attorney General and the State by the Fourteenth Amendment) and by Section 230 of the CDA, subject to the protections of 42 U.S.C. § 1983.

## CAUSES OF ACTION

### COUNT ONE
### Communications Decency Act, 47 U.S.C. § 230

50.   Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

51.   Section 230 immunizes interactive computer service providers from all state-law claims based on third-party content.  Section 230 immunizes websites from all such civil or criminal claims.  It expressly bars and preempts any effort by the Attorney General to prosecute—or threaten to prosecute—Backpage.com under the MMPA or any other law of the State for content posted by users on the website.  Section 230 also precludes any claims or prosecution related to Backpage.com's editorial decisions to screen, monitor, block, allow or disallow content.  47 U.S.C. § 230(c)(1).  The State cannot pursue a burdensome investigation on the ostensible premise that it is considering claims it has no authority to pursue or prosecute.

52.   Backpage.com is a provider of an interactive computer service within the meaning of Section 230.  The Attorney General's pursuit of Backpage.com and threats to prosecute or pursue civil claims for ads posted by third-party users would treat Backpage.com as the "publisher or speaker" of such content, in violation of the immunity and preemption provided by Section 230.

53.   Under Section 230, the Attorney General also cannot challenge the construct and operation of the Backpage.com website nor threaten prosecution on the premise that third-party information may have been unlawful or allegations that Backpage knew or might have known the content was unlawful.  *M.A.*, 809 F. Supp. 2d at 1050; *Universal Commcn's Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420-21(1st Cir. 2007).

54.   Section 230 provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  47 U.S.C.

§ 230(e)(3).  It provides immunity from suit and not merely a defense to liability.  Accordingly, the law must be applied at the earliest possible opportunity to accomplish its purposes and protect online service providers from burdensome litigation and improper threats of state sanctions or prosecution.

55.     The Attorney General's investigation, the CID, and threatened prosecution of Backpage.com under state law violate Section 230 as well as Backpage.com's immunity and the express preemption of state laws dictated by Section 230.

**COUNT TWO**
**Violation of the Rights of Backpage.com and Its Users**
**Under the First and Fourteenth Amendments**

56.     Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

57.     Backpage.com provides an online forum for speech of millions of users across the country.  User-supplied content on the website, including adult-oriented ads, are protected speech under the First Amendment.  The CID demands information about Backpage's editorial practices, which are also protected by the First Amendment.  *See Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974); *Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 438 (S.D.N.Y. 2014).

58.     Backpage.com's business is to provide a forum on the Internet for speech of third parties.  The Attorney General's investigation, threatened prosecution, and the CID all are a frontal attack on Backpage.com and the forum it provides.  All government actions must comply with First Amendment requirements and, when such actions implicate or threaten speech rights, it is the government's burden in all contexts to show that it is pursuing a compelling interest, its demands bear a substantial connection to a legitimate purpose, and the means employed are the least speech-restrictive approach possible.

18

59.     The Attorney General's investigation and CID do not satisfy these Constitutional requirements.  The Attorney General's public statements, the breadth of the CID, and the AG's actions in filing a state-court suit reflect that the State is targeting Backpage.com for its role in providing an online forum for content the AG dislikes and deems "immoral," despite that it is speech that courts have repeatedly held is protected by the First Amendment.

60.     The First Amendment bars liability against a publisher or distributor absent proof of scienter that it knew specific speech was unlawful.  *U.S. v. X-Citement Video, Inc*., 513 U.S. 64 (1994); *Smith v. California*, 361 U.S. 147 (1959).  The MMPA incorporates this First Amendment principle, as it provides that the law's proscriptions do not apply to "[t]he owner or publisher of any … publication … wherein such advertisement appears" when the publisher does not share or have knowledge of the specific intent of a third-party advertiser's misrepresentations.  The CID does not identify any user ad on Backpage.com that is the subject of the Attorney General's investigation; much less provide any grounds to suggest that any specific ad was illegal.  To allow the Attorney General's office to investigate every decision for every ad posted on Backpage.com on the premise that it might identify some ad that it could contend should have been blocked (or contend that *not* blocking a given ad was somehow nefarious) would directly contravene First Amendment (and Section 230) protections.

61.     A bad faith investigation or prosecution brought to squelch rights of free expression constitutes an independent injury to First Amendment and Fourteenth Amendment rights. *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965).  "[T]he state may not use the agents and instrumentalities of law enforcement to curb speech protected by the First Amendment." *United States v. P.H.E., Inc*., 965 F.2d 848, 854, 856 (10th Cir. 1992).  Where a government official's purpose is to drive a publisher "out of business"— including "by attrition if not

conviction"—immediate vindication of federal constitutional rights is required, and the government's actions should be enjoined.  *See id.* at 856; *PHE, Inc. v. U.S. Dept. of Justice*, 743 F. Supp. 15, 18, 26-27 (D.D.C. 1990).

62.     The First Amendment bars the Attorney General from seeking or threatening—explicitly or implicitly—to impose liability for speech he disfavors.  The AG's actions are a serious threat to infringe and chill protected speech and therefore must be enjoined.

## COUNT THREE
### Violation of the Rights of Backpage.com
### Under the Fourth, Fifth and Fourteenth Amendments

63.     Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

64.     The Attorney General's CID contravenes the rights provided to Backpage.com by the Fourth Amendment's proscription of unreasonable searches and seizures and the Fifth Amendment's guarantee of due process of law (made applicable to the states by the Fourteenth Amendment).

65.     The CID reflects an unreasonable search and seizure, because it is vastly overbroad and demands information about lawful conduct that is immunized from state regulation under Section 230 and protected under the First and Fourteenth Amendments.

66.     The subpoena violates due process under the Fifth Amendment because it is not reasonably related to any legitimate investigative purpose and is overly burdensome.

## COUNT FOUR
### Violation of the Missouri Merchandising Practices Act

67.     Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

68.     The MMPA concerns deceptive acts or practices "in connection with the sale or advertisement of any merchandise in trade or commerce … in or from the State of Missouri," RSMo. § 407.020, with "merchandise" defined to include "services," *id.* § 407.010(4).

69.     The "merchandise" Backpage.com provides its online classified advertising services, allowing users to post ads on the website.

70.     The CID gives no indication what allegedly deceptive practices the Attorney General's office  purports to be investigating.  The Attorney General has not suggested or indicated that Backpage.com ever advertised anything or made any suspected misrepresentation of any kind.  There is no suggestion that Backpage.com ever failed to provide online space for classified ads of users, which is the service Backapge.com offers and represents (accurately) that it provides.

71.     The MMPA requires that any investigative demand issued by the AG specifically set forth "the statute and section thereof [and] the alleged violation of which is under investigation," as well as "the general subject matter of the investigation."  RSMo. § 407.040.2(1).  Yet, the CID provides no specificity, but merely alleges that some or all of the vaguely defined "Suspects" have "engaged or are engaging in" some unidentified "merchandizing practices declared to be unlawful by § 407.020 RSMo."  In addition to the other respects in which the Attorney General's CID and investigation violate the CDA and the First Amendment, the CID violates due process, given the extraordinary overbreadth and vagueness of the CID's demands.

## COUNT FIVE
## Declaratory Judgment under 28 USC § 2201

72.     Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

73.     This action presents an actual case or controversy concerning the Attorney General's investigation of and related threat of criminal prosecution against Backpage.com. Declaratory relief is therefore necessary and appropriate.

21

74.     Plaintiffs are entitled to a declaration that the Attorney General's investigation, CID and related actions:

a.      Are barred and preempted by Section 230 of the CDA;

b.      Contravene the First, Fourth, Fifth and Fourteenth Amendment of the U.S. Constitution; and

c.      Violate the MMPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Backpage.com respectfully requests that this Court enter judgment in its favor and provide the following relief:

a.      Preliminary and permanent injunctions enjoining the Attorney General from enforcing the CID or further pursuing or threatening criminal prosecution or other action against Backpage.com and all past or current affiliates or related persons, parties or entities;

b.      A declaratory judgment that Section 230 of the CDA, and the First, Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution, preclude civil or criminal charges or liability under MMPA against BackPage.com for third-party content on the website; that the CID violates Section 230 and these constitutional protections; and that the CID violates the MMPA;

c.      An award to Plaintiff of all reasonable costs and attorneys' fees in this action pursuant to 42 U.S.C. § 1988; and

d.      Such other and further relief, including all relief that is proper under 42 U.S.C. § 1983, as the Court deems just and proper.

DATED:  July 11, 2017.

Respectfully submitted,

THOMPSON COBURN LLP


By */s/  Mark Sableman*
  Mark Sableman, MO - 36276
  Jan Paul Miller, MO – 58112
  Michael L. Nepple, MO – 42082
  One US Bank Plaza
  St. Louis, Missouri  63101
  314-552-6000
  FAX 314-552-7000
  msableman@thompsoncoburn.com
  jmiller@thompsoncoburn.com
  mnepple@thompsoncoburn.com

OF COUNSEL:

James C. Grant
 (*Pro hac vice application to be submitted*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
(206) 622-3150 (tel.); (206) 757-7700 (fax)
jimgrant@dwt.com

Robert L. Corn-Revere
 (*Pro hac vice application to be submitted*)
DAVIS WRIGHT TREMAINE LLP
Suite 800
1919 Pennsylvania Avenue NW
Washington, DC 20006-3401
(202) 973-4225 (tel.); (202) 973-4499 (fax)
bobcornrevere@dwt.com


*Attorneys for Plaintiff Backpage,com, LLC*