## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| BACKPAGE.COM, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case no.  4:17-CV-1951 PLC |
| | ) |
| JOSHUA D. HAWLEY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Missouri Attorney General Joshua Hawley's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [1] (ECF No. 21).  Plaintiff Backpage.com opposes the motion.  (ECF No. 34).  The Court held a hearing on AG Hawley's motion to dismiss.  For the reasons that follow, the Court grants AG Hawley's motion to dismiss.[2]

### I.     Factual and Procedural Background

In May 2017, AG Hawley issued civil investigative demands (CIDs) to Backpage, Backpage's CEO Carl Ferrer, and two other corporate officers (collectively, "Backpage Recipients") for the purpose of investigating possible violations of the Missouri Merchandising Practices Act (MMPA), Mo. Rev. Stat. §§ 407.010, et seq.  (ECF Nos. 1 at 12, 21-2).  The MMPA broadly prohibits false, fraudulent, or deceptive merchandising practices and "imposes

---

[1] Plaintiff Backpage.com, LLC and AG Hawley consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

[2] Causes of action for damages may be stayed but not dismissed on abstention grounds. Quakenbush v. Allstate Ins. Co., 517 U.S. 706, 721 (1996).  In contrast, abstention under Younger v. Harris, 401 U.S. 37 (1971) applies in a case where only injunctive or equitable relief is sought, the proper disposition is dismissal of the federal action.  Yamaha Motor Corp., U.S.A. v. Stroud, 179 F.3d 598, 603-04 (8th Cir. 1999).  Because Backpage seeks only equitable relief and no monetary damages, dismissal is proper.

criminal penalties and civil liability on persons who engage in conduct that it deems unlawful." Huch v. Charter Commc'ns Inc., 290 S.W.3d 721, 725 (Mo. banc 2009).

Each CID advised:  "The investigation will inquire into the activities of [Backpage Recipients] in connection with the sale or advertisement, as defined in Section 407.010, RSMo, of commercial sexual conduct, other sexually oriented services, massage services, dating services and other merchandise" to "determine whether the [Backpage Recipients] have used deception, fraud, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of material fact in connection with the sale or advertisement of the above merchandise."  (ECF No. 21-2 at 1).

The CID served upon Backpage demanded Backpage provide AG Hawley the information and documents described in twenty-four numbered paragraphs by June 7, 2017.  (Id. at 3).  Among other things, the CID demanded Backpage:

- Provide all documents concerning Backpage's reviewing, blocking, deleting, editing, or modifying advertisements that appear on its website, either by Backpage employees or agents, or by automated software processes, including but not limited to policies, manuals, memoranda, and guidelines.

- Provide all documents concerning advertising posting limitations, including but not limited to the "Banned Terms List," the "Grey List," and error messages, prompts, or other messages conveyed to users during the advertisement drafting or creation process.

- Provide all documents concerning human trafficking, sex trafficking, human smuggling, prostitution, or the facilitation or investigation thereof, including but not limited to policies, manuals, staff training materials, memoranda, and guidelines.

- Identify every posting or advertisement posted in the Adult Section of the Missouri Locations that was either (a) deleted, edited, or modified by Backpage employees or agents, or (b) blocked, deleted, edited, or modified by any automated software process.

- For each posting or advertisement identified in response [to the preceding paragraph], provide both (a) a copy of the posting or advertisement as originally submitted by the Backage user, and (b) a copy of the posting or advertisement as it was publicly posted on Backpage.

(Id. at ¶¶ 4, 5, 7, 11, 12). The CID advised Backpage that "an extension of time or modification of the terms of the Investigative Demand may be sought only for good cause pursuant to the terms of Section 407.070, RSMo." (Id. at 6). In addition, the CID warned that Section 407.080 "makes certain acts done with the intent to avoid, evade, or prevent compliance in whole or in part with any Investigative Demand served hereunder a Class A Misdemeanor[.]" (Id.).

The parties dispute whether Assistant Attorney General Mary Morris extended Backpage's deadline for responding to the CID. (ECF Nos. 21-1 at ¶ 15, 45 at ¶ 4-5). While the parties agree that attorney Jim Grant called Ms. Morris and requested an extension of time, they dispute whether he identified himself as counsel for Mr. Ferrer alone or for Mr. Ferrer and Backpage. Id. According to Ms. Morris, Mr. Grant identified himself as counsel for Mr. Ferrer, and she agreed to extend the deadline for Mr. Ferrer's response from June 7, 2017 until July 7, 2017. (ECF No. 21-1 at ¶¶ 16-19). Mr. Grant avers that he informed Ms. Morris that he represented Backpage and Mr. Ferrer, as evidenced by his subsequent email to Ms. Morris thanking the AG's office for granting "my clients" an extension.[3] (ECF Nos. 14-11, 45).

On June 15, 2017, AG Hawley filed in the Circuit Court of St. Charles County a "Petition for Order to Enforce Civil Investigative Demand" against Backpage pursuant to Mo. Rev. Stat. § 407.090.[4] (ECF Nos. 1 at ¶ 43, 21-5). In the petition, AG Hawley stated that he initiated the

---

[3] Mr. Grant responded to the CID on behalf of Mr. Ferrer and Backpage on July 7, 2017. (ECF Nos. 21-1 at ¶ 29; 21-7). Their response to the CID consisted entirely of objections and they produced no documents. (ECF No. 21-7).

[4] The court takes judicial notice of the pending state-court docket of State of Missouri, ex rel. Attorney General Hawley v. Backpage.com, LLC, No. 1711-CC00589 (Circuit Court of St. Charles County, filed June 15, 2017) available at https://www.courts.mo.gov/casenet. See e.g.,

investigation into possible violations of the MMPA and issued the CID based upon a report by the United States Senate's Permanent Subcommittee on Investigations, which revealed Backpage's role in facilitating and concealing illegal activity, such as human trafficking and commercial sexual exploitation. (ECF No. 21-5 at ¶ 1).   AG Hawley alleged that Backpage had neither "produced any requested documentation or information, nor . . . filed a petition to extend the return date for, or to modify or set aside the [CID]" pursuant to Mo. Rev. Stat. § 407.070, and therefore requested an order enforcing the CID.  (Id. at ¶¶ 18, 22, 23).

On July 11, 2017, Backpage filed in this Court a "complaint for injunctive and declaratory relief," asking the Court to "enjoin and declare unlawful" AG Hawley's efforts to investigate and prosecute it under the MMPA.  (ECF No. 1).  In the complaint, Backpage argues that Section 230 of the Communications Decency Act (CDA), 47 U.S.C. § 230, bars state law claims against internet websites and publishers arising from content created by a third party.  (Id. at 17-18).  Backpage also claims that AG Hawley's investigation and the CID violated:  the rights of Backpage and its users under the First and Fourteenth Amendments; Backpage's rights under the Fourth, Fifth, and Fourteenth Amendments; and the MMPA.   (Id. at 18-21).  Approximately two weeks later, Backpage filed a motion for preliminary injunction based on its purported immunity under the CDA and its constitutional rights under the First, Fourth, and Fifth Amendments.  (ECF No. 11).

AG Hawley moved to dismiss Backpage's complaint pursuant to Rules 12(b)(1) and 12(b)(6).  (ECF No. 21).  In his motion, AG Hawley argues that the Court should dismiss the case pursuant to Younger v. Harris, 401 U.S. 37 (1971) and that Backpage failed to state a claim upon which relief can be granted.  (ECF No. 21 at 10-11).  Backpage responded (ECF No. 34),

---

Matter of Phillips, 593 F.2d 356, 358 (8th Cir. 1979) (a federal court may properly take judicial notice of state-court proceedings).

and the Court heard arguments regarding the application of the <u>Younger</u> doctrine.  Backpage has

since filed a "Second Motion for Preliminary Injunction to Prevent Enforcement of 15 CSR 60-

16.040" (ECF No. 48).  In that motion, Backpage contends that the state regulation, entitled

"Conducting Sex Trafficking Under False Pretenses" and effective October 30, 2017, directly

conflicts with the Section 230 of the CDA and unconstitutionally restricts free speech.  (<u>Id.</u>).

### II.   *Legal Standard*

Federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given

them."  <u>Barzilay v. Barzilay</u>, 536 F.3d 844, 849 (8th Cir. 2008) (quoting <u>Colorado River Water</u>

<u>Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976)).  However, the United States

Supreme Court has articulated several abstention doctrines as exceptions to the rule, including

the <u>Younger</u> doctrine.  <u>Id.</u>  Under <u>Younger</u>, the district court has discretion to decline jurisdiction

when federal action would needlessly interfere with an ongoing state proceeding.  <u>Geier v.</u>

<u>Missouri Ethics Comm'n</u>, 715 F.3d 674, 678 (8th Cir. 2013).

### III.   *Discussion*[5]

---

[5] The parties dispute whether the Court should consider the issue of <u>Younger</u> abstention pursuant
to the pleading and burden requirements of either Rule 12(b)(1) or Rule 12(b)(6).  AG Hawley
argues that <u>Younger</u> abstention implicates Rule 12(b)(1), providing for dismissal due to a court's
lack of subject matter jurisdiction, because, according to the Supreme Court, "<u>Younger</u>
abstention is 'treated as jurisdictional.'"  (ECF No. 42 at 2) (quoting <u>Steel Co. v. Citizens for a</u>
<u>Better Env't.</u>, 523 U.S. 83, 100 n. 3 (1998)).  Backpage argues Rule 12(b)(1) is not the proper
vehicle for considering <u>Younger</u> abstention because Rule 12(b)(1) motions challenge the
existence of subject matter jurisdiction, and the issue here is not whether the Court has
jurisdiction but whether the Court should exercise that jurisdiction.  (ECF No. 34 at 6-7).  <u>See</u>
<u>Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.</u>, 477 U.S. 619, 626 (1986) (<u>Younger</u>
abstention "does not arise from lack of jurisdiction in the District Court, but from strong policies
counseling against the exercise of such jurisdiction where particular kinds of state proceedings
have already been commenced.").  According to Backpage, AG Hawley's motion to dismiss
should be treated as a Rule 12(b)(6) motion and, consequently, the Court should not consider
evidence outside the pleadings.  (ECF No. 34 at 6-7).  However, "Rule 12(b)(6) does not seem
apt because the request for abstention is more in the nature of a defense and depends on
assertions not ordinarily included in a complaint."  <u>Christian Action Network v. Maine</u>, 679
F.Supp.2d 140, 143 n.2 (D.Me. 2010).  The Court relies upon neither rule and finds

AG Hawley argues that the <u>Younger</u> doctrine bars this Court's consideration of Backpage's complaint because the state-court action:  (1) is ongoing; (2) implicates important state interests, namely, enforcement of Missouri's consumer-protection laws; and (3) provides Backpage ample opportunity to raise its federal-law arguments in opposition to enforcement of the CID.  (ECF No. 21 at 11-13).  In response, Backpage contends that AG Hawley based his motion to dismiss on "outdated authority" and that "this case presents no basis for abstention under the limited exceptions of <u>Younger</u> and <u>Sprint Communications v. Jacobs</u>, [134 S.Ct. 584 (2013) ("<u>Sprint</u>")]."  (ECF No. 34 at 26).

The <u>Younger</u> abstention doctrine provides that, in "exceptional circumstances," a federal court must "refus[e] to decide a case in deference to the States."  <u>Sprint</u>, 134 S.Ct. at 591 (quoting <u>New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans</u>, 491 U.S. 350, 368 (1989) ("NOPSI")).  This doctrine originates from the underlying principles of:  equity, which provides that "courts of equity should not act…when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief"; and "'comity,' that is, a proper respect for state functions."  <u>Younger</u>, 401 U.S. at 43-44.  <u>See also</u> <u>Ohio Bureau of Emp't Servs. v. Hodory</u>, 431 U.S. 471, 479 (1977) (<u>Younger</u> abstention "allow[s] the State an opportunity to 'set its own house in order' when the federal issue is already before a state tribunal.").

While the <u>Younger</u> doctrine originally applied only to state criminal proceedings, the Supreme Court has enlarged the doctrine to include certain civil actions.  <u>See, e.g.,</u> <u>Juidice v.</u>

that,"[b]ecause [<u>Younger</u>] abstention is 'a prudential rather than a jurisdictional ground for dismissal,' the pleading and burden requirements of Rule 12(b)(6) are not applicable, nor is the court 'limited to the facts that the plaintiff pleaded to determine whether comity and federalism counsel against [the] exercise of jurisdiction."  <u>Gall v. Steele</u>, No. 2:13-CV-111 CDP, 2015 WL 75234, at *1 n.2 (E.D.Mo. Jan. 6, 2015) (quoting <u>Christian Action Network</u>, 679 F.Supp.2d at 143 n.2).  <u>See also</u> <u>Chicago Ins. Co. v. Diocese of Kansas City-St. Joseph</u>, No. 4:13-CV-678 DGK, 2014 WL 556358, at *1 (W.D.Mo. Feb. 13, 2014).

Vail, 430 U.S. 327 (1977); Huffman v. Pursue, Ltd., 420 U.S. 592 (1975).  Nevertheless, as the Supreme Court recently clarified, Younger does not apply to "all parallel state and federal proceedings."  Sprint, 134 S. Ct. at 593.  In Sprint, the Court reaffirmed its holding in NOPSI that Younger abstention only limits federal-court intervention in the following three categories of state proceedings:  (1) ongoing state criminal prosecutions; (2) "certain 'civil enforcement proceedings'"; and (3) "pending civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."  Id. at 591 (citing NOPSI, 491 U.S. at 368).

The Sprint Court employed a three-step approach to Younger abstention.  First, a court determines whether a particular state proceeding falls within one of the Sprint categories.  Sprint, 134 S. Ct. at 591.  If so, a court must consider whether the three factors articulated in Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982) support abstention. Id. at 593.  In Middlesex, the Supreme Court identified three factors a court must consider before invoking Younger:  (1) the existence of an "an ongoing state judicial proceeding," which (2) "implicate[s] important state interests," and (3) provides "an adequate opportunity to raise the constitutional claims."  Middlesex, 457 U.S. at 432.  See also Sprint, 134 S. Ct. at 593 (the Middlesex factors are "not dispositive; they [are] instead, additional factors appropriately considered by the federal court[.]").

If the case satisfies the requirements of Sprint and Middlesex, a court considers whether any of the exceptions to the Younger doctrine apply.  Middlesex, 457 U.S. at 435.  The Supreme Court has held that, even where all of the above factors are satisfied, a court should decline to invoke Younger if there is a "showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate."  Id.

A. *Sprint categories*

Backpage argues that <u>Younger</u> abstention is improper because the state-court action does not fit any of the state proceeding categories set forth in <u>Sprint</u>.  (ECF No. 34 at 28-29).  More specifically, Backpage contends that the state-court action:  (1) is not a criminal proceeding;[6] (2) is not a "civil enforcement proceeding" because the State has not brought any civil claims or criminal charges against Backpage; and (3) does not concern an order "uniquely in furtherance of the state court['s] ability to perform [its] judicial functions."  <u>Id.</u> at 28-29 (quoting <u>Sprint</u>, 134 S. Ct. at 591).  In his reply brief, AG Hawley asserts that the state-court action falls into both the second and third <u>Sprint</u> categories because it:  (1) is a civil enforcement proceeding; and (2) involves a state court's ability to perform its judicial functions.

1.   Civil Enforcement Proceeding

<u>Younger</u> abstention applies where a state-court, civil enforcement proceeding is "akin to a criminal prosecution" in "important respects."  <u>Sprint</u>, 134 S.Ct. at 592 (quoting <u>Huffman</u>, 420 U.S. at 604).  The <u>Sprint</u> Court identified several indicia of civil enforcement proceedings.  <u>Id.</u> First, "[s]uch enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act."  <u>Id.</u> (citing <u>Middlesex</u>, 457 U.S. at 433-34).  Additionally, "[i]n cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the [state] action" and   "[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges."  <u>Id.</u>

Assessing the nature of the state-court action requires an understanding of the CIDs issued pursuant to the MMPA.  As previously stated, the MMPA prohibits false, fraudulent, or

---

[6] Neither party characterizes the state-court action as a criminal proceeding.  Therefore, the Court need not address that <u>Sprint</u> category.

deceptive merchandising practices and "imposes criminal penalties and civil liability on persons[7] who engage in conduct that it deems unlawful." Huch, 290 S.W.3d at 725 (footnote added). See also Mo. Rev. Stat. §§ 407.020.4, 407.100, 407.130.  "One of the responsibilities of the AG is investigating and prosecuting violations of Missouri's consumer protection statutes[.]" State ex rel Koster v Charter Commc'ns Inc., 461 S.W.3d 851, 853 (Mo.App.W.D. 2015).  In furtherance of these investigations, the MMPA authorizes the Attorney General to issue a CID when it "appears. . . that a person has engaged in or is engaging in any method, act, use, practice or solicitation declared to be unlawful by this chapter[.]"  Mo. Rev. Stat. § 407.040.1.  A CID is an administrative subpoena, Charter Commc'ns, 461 S.W.3d at 857, that requires the recipient "to appear and testify, or to produce relevant documentary material or physical evidence [f]or examination[.]"  Mo. Rev. Stat. § 407.040.1.

The recipient of a CID may, "[a]t any time before the return date specified in a [CID] . . ., or within twenty days after the [CID] has been served," file in circuit court "a petition to extend the return date for, or to modify or set aside the civil investigative demand, stating good cause[.]"  Mo. Rev. Stat. § 407.070.  The MMPA further provides that:

> Any person who, with intent to avoid, evade, or prevent compliance, in whole or in part, with any [CID], removes from any place, conceals, withholds, or destroys, mutilates, alters, or by any other means falsifies any information, documentary material, or physical evidence[,]…which is the subject of any such [CID] shall be guilty of a class A misdemeanor.

Mo. Rev. Stat. § 407.080.

CIDs are not self-enforcing.  Charter Commc'ns, 461 S.W.3d at 857.  This means that the issuing agency cannot itself sanction non-compliance.  Id.  Importantly, however, "[i]f the

---

[7]  The MMPA defines the term "person" to include:  "any natural person or his legal representative, partnership, firm, for-profit or not-for-profit corporation, whether domestic or foreign, company, foundation, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof[.]"  Mo. Rev. Stat. § 407.010(5).

recipient refuses to comply with the CID, the AG may seek to have the court order compliance pursuant to section 407.090." Id. See also Mo. Rev. Stat. § 407.090 (if the recipient fails to comply with the CID, the attorney general "may file, in the trial court of general jurisdiction . . . a petition for an order of such court for the enforcement of such civil investigative demand[.]").

Here, AG Hawley is a state actor who initiated the state-court action for the purpose of obtaining "an Order enforcing the Investigative Demand, and ordering Backpage to produce responses to [the CID.]"  (ECF No. 21-5).   The state-court action clearly involves an investigation with the potential to culminate in the filing of a formal complaint or charges.  As such, the state-court action satisfies the indicia of the second Sprint category.

Backpage contends that the state-court action is not "a civil enforcement proceeding" for purposes of Younger abstention because AG Hawley is only investigating, not prosecuting, possible MMPA violations.  (ECF No. 34 at 28-31).  In support of its argument, AG Hawley cites Cedar Rapids Cellular Tel., L.P. v. Miller, 280 F.3d 874 (8th Cir. 2002).[8]  In Cedar Rapids Cellular, the attorney general brought a civil enforcement action against U.S. Cellular, the parent corporation of Cedar Rapids Cellular and Davenport Cellular, alleging violations of the Iowa Consumer Credit Code.  Id. at 876.  On the same day, Cedar Rapids Cellular, Davenport Cellular, and a third cellular company, WWC License, filed a complaint in federal district court seeking to "enjoin the Attorney General from taking any action . . . to enforce" the Iowa Consumer Credit Code against them.  Id. at 877.  Citing several abstention doctrines, the district court abstained.  Id. at 878.

---

[8] Plaintiff also cites the Ninth Circuit's decision in ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund, 754 F.3d 754 (9th Cir. 2014).  ReadyLink is inapposite.  In that case, ReadyLink initiated "parallel judicial proceedings" in state and federal court against the State Compensation Insurance Fund, "an 'insurer' on the same basis as any private carrier offering workers' compensation."  Id. at 756.  The Ninth Circuit held that the district court erred in abstaining under Younger because a state-court proceeding in which "a state judicial officer resolves a dispute between two private parties" is not akin to a criminal prosecution.  Id. at 760.

The Eighth Circuit affirmed the district court's decision to invoke Younger and abstain from the claims of the two federal plaintiffs in which U.S. Cellular, the state-court defendant, had "a controlling interest."  Id. at 882.  However, the court found "that Younger does not provide a basis for abstaining from the claims of WWC" because WWC was neither directly involved in the state-court proceeding nor closely related to U.S. Cellular.  Id.

In reversing the district court's decision to abstain from deciding WWC's claims, the Eighth Circuit rejected the attorney general's argument that "his attempt to obtain information from WWC triggered Younger abstention."   Id.   The Eighth Circuit reasoned that, while administrative proceedings may be judicial for purposes of Younger if they "declare and enforce liabilities between the parties," the attorney general's administrative action against WWC "involve[d] nothing more than an attempt to obtain information about WWC's business practices."  Id.  The court stated:  "Although the Attorney General's demand for information may ultimately result in a judicial proceeding, there is no indication that a judicial proceeding was imminent at the time this case was filed."  Id.  See also Google, Inc. v. Hood, 822 F.3d 212 (5th Cir. 2016) (district court properly declined to abstain because there was no "ongoing judicial proceeding" where the attorney general had issued an administrative subpoena but had "not moved to enforce [it] in any state court[.]").

Unlike WWC, the federal plaintiff not involved in the state-court action in Cedar Rapids Cellular, Backpage is the defendant in the state-court action.  Because Backpage is the defendant in the pending state-court action, Backpage more closely resembles the two federal plaintiffs to which the Eighth Circuit held that Younger applied.   Moreover, whereas no judicial proceeding against WWC was "imminent," AG Hawley served the CID and filed the state-court action to enforce it, thereby triggering judicial oversight of the CID.  Based on the above, the Court finds

that the state-court action is "a civil enforcement proceeding" as required for application of the <u>Younger</u> abstention doctrine.

### 2.    Uniquely in Furtherance of State Courts' Functions

The third category of state-court proceeding justifying <u>Younger</u> abstention encompasses "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."  <u>Sprint</u>, 134 S.Ct. at 591.  Backpage argues that this case does not satisfy the third <u>Sprint</u> category because Backpage does not challenge a prior judgment or state-court procedure. (ECF No. 34 at 29).  AG Hawley counters that this case falls within the third <u>Sprint</u> category because it implicates a state court's ability to enforce subpoenas under state law.  (ECF No. 42 at 7-9).

In establishing the third <u>Sprint</u> category, the Supreme Court cited two cases:  <u>Juidice v. Vail</u> and <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1 (1987).  In <u>Juidice</u>, the Supreme Court held that <u>Younger</u> abstention was proper where, after a state court held the federal plaintiff in contempt of court for failing to comply with a subpoena, the plaintiff filed a federal action seeking to enjoin the state court's use of statutory contempt procedures.  <u>Juidice</u>, 430 U.S. at 330.  The Court held that principles of comity and federalism required abstention because "[t]he contempt power lies at the core of the administration of a State's judicial system" and "such interference with the contempt process . . . 'unduly interfere(s) with the legitimate activities of the Stat(e).'"  <u>Id.</u> at 335, 336 (quoting <u>Younger</u>, 401 U.S. at 44).  The <u>Pennzoil</u> Court followed <u>Juidice</u>, holding that <u>Younger</u> abstention was proper where the exercise of federal jurisdiction would interfere with a state court's proceeding concerning the requirement of the posting of bond pending appeal.  <u>Pennzoil</u>, 481 U.S. at 12-13 ("States have important interests in administering certain aspects of their judicial systems.").

While <u>Juidice</u> and <u>Pennzoil</u> "involve[d] challenges to the processes by which the State compels compliance with the judgments of its courts," nothing in either case established that a prior judgment is a requisite for abstaining pursuant to the third <u>Sprint</u> category of state-court proceedings.  The "salient fact" in those cases was that federal-court interference with the State's process is "an offense to the State's interest" and "can readily be interpreted 'as reflecting negatively upon the state courts' ability to enforce constitutional principles.'"  <u>Juidice</u>, 430 U.S. at 336 (quoting <u>Huffman</u>, 420 U.S. at 604).

Here, Backpage requests this Court enjoin and declare unlawful AG Hawley's efforts to investigate and prosecute Backpage under the MMPA.  Pursuant to the MMPA, state courts play a significant role in the investigation and prosecution of unlawful merchandising practices.   As previously discussed, the MMPA authorizes the attorney general to issue CIDs to investigate suspected unlawful merchandising practices, and "[a] person upon whom a [CID] is served . . . shall comply with the terms thereof unless otherwise provided by an order of a court."  Mo. Rev. Stat. §§ 407.040, 407.080.  If the recipient of a CID fails to comply with its demands, the attorney general may file in state court a petition "for an order of such court for the enforcement" of the CID," and "[a]ny disobedience of any final order entered under this section by any court shall be punished as a contempt thereof."  Mo. Rev. Stat. § 407.090.

AG Hawley filed the state-court action to enforce the CID pursuant to Section 407.090.  As a result, Backpage's request that the Court enjoin AG Hawley's efforts to investigate and prosecute potential violations of the MMPA necessarily affects functions performed by the state court.  The Court therefore holds that the state-court action is a "civil proceeding[] involving certain orders  . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."  <u>See e.g.</u>, <u>Lupin Pharm., Inc. v. Richards</u>, No. RDB-15-1281, 2015 WL 4068818, at

*3-4 (D. Md. July 2, 2015) (federal plaintiff's action to enjoin enforcement of CIDs, issued by the state's attorney general investigating potential violations of antitrust and consumer-protection statutes, implicated the state's interest in enforcing the orders and judgments of its courts). Accordingly, the third <u>Sprint</u> category also requires this Court to abstain pursuant to <u>Younger</u>.

       B. *<u>Middlesex</u> "additional factors"*

Having determined that the state-court action satisfies at least one of the <u>Sprint</u> categories, the Court must consider the three "additional factors" that the Supreme Court articulated in <u>Middlesex</u>, 457 U.S. at 432.  <u>See also</u> <u>Sprint</u>, 134 S. Ct. at 593.  Before invoking <u>Younger</u>, a federal court must consider whether:  (1) there is an ongoing state proceeding that is judicial in nature, (2) which implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges.  <u>Sprint</u>, 134 S. Ct. at 593.

The parties do not dispute that the state-court action is ongoing and judicial in nature. Backpage argues, however, that the state-court action "should not constitute a pending state-court action for abstention purposes" because AG Hawley filed the petition in advance of the agreed-upon deadline for responding to the CIDs "to obstruct federal jurisdiction."  (ECF No. 34 at 31-32).  Backpage cites no case law for the proposition that either a race to the courthouse or allegedly disingenuous legal maneuvering defeats <u>Younger</u> abstention.  Moreover, the Eighth Circuit has held:  "There is no fixed requirement in the law that a state judicial proceeding must have been initiated before the federal case was filed for abstention to be appropriate, and a court should examine what was actually taking place in both settings to decide whether to abstain." <u>Aaron v. Target Corp.</u>, 357 F.3d 768, 775 (8th Cir. 2004).  <u>See also</u> <u>Doran v. Salem Inn, Inc.</u>, 422 U.S. 922, 929 (1975) (even though the federal action was filed before the state action,

Younger abstention was appropriate because litigation of the federal action was "in an embryonic stage and no contested matter had been decided.").

As AG Hawley correctly asserts in his reply brief, Younger abstention would be at issue even if AG Hawley had filed the state-court action after the extended deadline expired or Backpage responded to the CID.[9]  The key factor in determining whether Younger abstention is proper is not the relative timing of the state and federal actions but "[w]hether proceedings of substance have taken place in either court."  Aaron, 357 F.3d at 775.  See also Ewell v. Toney, 853 F.3d 911, 916-17 (7th Cir. 2017).  As both this action and the state-court action are in their preliminary stages with no contested matters having been decided by either court, considerations of equity and comity support abstention.  The Court therefore finds that the state-court action satisfies the "ongoing state proceeding" factor set forth in Middlesex.

As to the second Middlesex factor, the Eighth Circuit has recognized that a state "has an important interest in enforcing its consumer protection statutes" and "protecting the public from deceptive business practices."  Cedar Rapids Cellular, 280 F.3d at 879-80.  Because the state-court action here involves the state's efforts to enforce the state's consumer-protection laws, it satisfies the "important state interests" requirement.

The third Middlesex factor considers whether the federal plaintiff had, or will have, "an opportunity to present [its] federal claims in the state proceedings."  Juidice, 430 U.S. at 337.  A plaintiff's "failure to avail [itself] of such opportunities does not mean that the state procedures were inadequate."  Id.  Additionally, the plaintiff in the federal lawsuit "carries the burden of demonstrating that the Missouri proceedings do not provide 'an adequate opportunity' for it to

---

[9] AG Hawley asserts that, even if the State had waited until the July 7, 2017 deadline when Backpage responded to the CID, he would have filed the state-court action because Backpage's response was "plainly deficient and included no responsive documents or information."  (ECF No. 21 at 23).

15

raise constitutional claims." <u>Geier</u>, 715 F.3d at 678-79.  Backpage does not argue that the state-court proceedings will not provide it an adequate opportunity to raise federal preemption or constitutional challenges.

In this case, there are (or were) adequate opportunities for Backpage to present its federal claims in the state-court action.  As explained above, the MMPA provides a mechanism for the recipient of a CID to challenge the CID.  Mo. Rev. Stat. § 407.070 ("At any time before the return date specified in the [CID], or within twenty days after the [CID] has been served, whichever period is shorter, a petition . . . to modify or set aside the [CID], stating good cause, may be filed in the circuit court[.]").  At such a proceeding, the recipient of the CID may raise federal challenges.  <u>See e.g.</u>, <u>State ex rel. Ashcroft v. Goldberg</u>, 608 S.W.2d 385, 388 (Mo. banc 1980) (considering whether the MMPA violated a CID recipient's rights under the Fourth, Fifth, and Fourteenth Amendments).  <u>See also</u> <u>Charter Commc'ns</u>, 461 S.W.3d at 858 n.5 (the defendant in the state court action did not object to the CID pursuant to section 407.070, but the trial court allowed it to assert federal defenses out of time in its answer to the attorney general's section 407.090 civil enforcement petition).

Backpage provides no authority holding that Missouri state courts lack authority to consider federal preemption and constitutional challenges.  "[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."  <u>Pennzoil Co.</u>, 481 U.S. at 15.  Because Backpage could have raised its federal preemption and constitutional arguments in state court, the third <u>Middlesex</u> factor has been satisfied.  Based on the above, the Court finds that abstention is proper under either the second

or third state-court proceeding categories discussed in <u>Sprint</u>, as well as the three factors set forth in <u>Middlesex</u>.

### C.  *Exceptions to <u>Younger</u>*

Backpage argues that, even if the state-court action satisfies the criteria for <u>Younger</u> abstention, abstention is improper because: (1) the CDA preempts the state-court action; and (2) AG Hawley acted in bad faith.  (ECF No. 34 at 32-38).  AG Hawley counters that:  (1) the CDA does not immunize Backpage from liability under the MMPA; and (2) Backpage failed to demonstrate AG Hawley's bad faith.

### 1.  Federal Preemption

Backpage asserts that <u>Younger</u> abstention is improper because the CDA shields it from "investigation and any possible claims arising from third-party postings on the website."  (ECF No. 34 at 16).  According to Backpage, the CDA "facially" and "conclusively" preempts AG Hawley's state-court action because AG Hawley's allegations suggest only that Backpage engaged in "*content editing*, not *content creation*."  (<u>Id.</u> at 24) (emphasis in original).  In reply, AG Hawley contends that the CDA does not preempt his efforts to enforce the MMPA against Backpage because:  (1) substantial evidence indicates that Backpage actively participated in "the creation or development of information" displayed on the website; and (2) Backpage implemented extensive measures to conceal the illegality of advertisements for commercial sex.  (ECF No. 42 at 12-16).

The Supreme Court has held that "the mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction."  <u>NOPSI</u>, 491 U.S. at 365.  However, the Court left open the possibility that <u>Younger</u> might not require

abstention where a claim of federal preemption is "facially conclusive."[10]  Id. at 367.  See also

Cedar Rapids Cellular, 280 F.3d at 880.  A federal preemption claim is not facially conclusive if

its determination "requires further factual inquiry[.]"[11]  Id.

Section 230 of the CDA immunizes providers of "interactive computer services"[12]

against liability arising from content created by third parties.  47 U.S.C. § 230(c).  "This grant of

immunity applies only if the interactive computer service provider is not also an 'information

content provider,' which is defined as someone who is 'responsible, in whole or in part, for the

creation or development of' the offending content."  Fair Hous. Council of San Fernando Valley

v. Roommates.com, LLC, 521 F.3d 1157, 1162 (9th Cir. 2008) (quoting 47 U.S.C. § 230(f)(3)).

In effect, Section 230 "shields website operators from being 'treated as the publisher or speaker'

of material posted by users of the site, which means that 'lawsuits seeking to hold a service

---

[10] The Eighth Circuit has recognized a possible exception to Younger abstention for preemption claims that are "facially conclusive," but declined to rule on it.  Cedar Rapids Cellular, 280 F.3d at 880.  Other federal courts of appeal have held that such an exception exists.  See Sirva Relocation, LLC v. Richie, 794 F.3d 185, 198 (1st Cir. 2015); Hughes v. Attorney General of Florida, 377 F.3d 1258, 1265 (11th Cir. 2004).

[11] The Eighth Circuit has not addressed what makes a claim facially conclusive.  See Minnesota Living Assistance, Inc. v. Peterson, No. 17-1011 (DSD/DTS), 2017 WL 2804905, at *2 (D. Minn. June 28, 2017).  "Other circuits, however, have identified the following scenarios where preemption claims are not facially conclusive:  (1) when a further factual inquiry is required; (2) when the claim involves a question of first impression; and (3) when the court must conduct a 'detailed analysis' of the state statute in question[.]"  Id. (internal citation omitted).  See also Sirva, 794 F.3d at 198-99 ("[W]hen a federal statute indisputably preempts a state-law claim, preemption is facially conclusive . . . But when there is reasonable doubt, the preemption claim is not facially conclusive and cannot block abstention."); Hughes, 377 F.3d at 1265 ("[O]nly the clearest of federal preemption claims would require a federal court to hear a preemption claim when there are underlying state-court proceedings and when that claim can be raised in the state forum.").  "When courts have found that preemption was facially conclusive, they merely applied established precedent that easily resolved the preemption issue."  Minnesota Living, 2017 WL 2804905, at *2 (citing Chaulk Servs., Inc. v. Mass. Comm'n Against Discrimination, 70 F.3d 1361, 1370 (1st Cir. 1995); Gartrell Constr. Inc. v. Aubry, 940 F.2d 437, 441-442 (9th Cir. 1991)).

[12]  The CDA defines the term "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]"  47 U.S.C. § 230(f)(2).  The parties agree that Backpage is an interactive computer service" provider.

provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content – are barred.'" Jane Doe No. 1 v. Backpage, LLC, 817 F.3d 12, 18 (1st Cir. 2016) (internal citations and quotation omitted).

Backpage cites Doe No. 1 for the proposition that, as an interactive computer service provider, its "choices about what content can appear on the website and in what form, are editorial choices that fall within the purview of traditional publisher functions," and are therefore shielded by the CDA.  Id. at 21.  In Doe No. 1, the plaintiffs, minor victims of sex trafficking, alleged that Backpage "tailored its posting requirements to make sex trafficking easier" and implemented "rules and processes governing the content of advertisements . . . designed to encourage sex trafficking."  Id. at 16.  The First Circuit held that the CDA immunized Backpage from liability under the state's anti-sex-trafficking law because:  "[C]laims that a website facilitates illegal conduct through its posting rules necessarily treat the website as a publisher or speaker of content provided by third parties and, thus, are precluded by section 230(c)(1)."  Id. at 22.  See also M.A. v. Village Voice Media Holdings, LLC, 809 F.Supp.2d 1041, 1048 (E.D.Mo. 2011) (Backpage was immune from liability for crimes against minor because "there is no allegation that Backpage was responsible for the development of any portion of the *content* of [the] posted ads or specifically encouraged the development of the offensive nature of that content.") (emphasis original).

Doe No. 1 is distinguishable because the plaintiffs' claims focused on Backpage's posting standards.  In the state-court action here, AG Hawley alleges that Backpage's activities exceeded that of a mere publisher of third-party content. (ECF No. 21 at 17).  For example, AG Hawley claims that Backpage "solicited the posting of illegal advertisements on its website" and "its own employees actively participated in the creation of those advertisements."  (ECF No. 21

at 17).  <u>See, e.g.</u>, <u>Roommates.com</u>, 521 F.3d at 1166-67 (CDA did not apply where interactive computer service provider was responsible, at least in part, for development of subscribers' profiles displaying discriminatory preferences).  Additionally, AG Hawley states that Backpage "implemented a sophisticated system by which it identified posts likely involving illegal commercial sex, revised the content of those identified posts to limit law-enforcement attention, and then posted them to Backpage's website."  (ECF No. 21 at 18).  <u>See, e.g.</u>, <u>Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.</u>, 519 F.3d 666, 670 (7th Cir. 2008) (Section 230 permits liability for internet service providers that "induce" advertisers to post illegal advertisements or intentionally design their systems to facilitate illegal acts).

Determining whether the CDA preempts AG Hawley's state-law MMPA claims would require the Court to:  (1) consider disputed facts relating to Backpage's role in revising and posting advertisements and (2) analyze whether those activities constitute "creation or development" under the CDA.  Because this issue requires further factual inquiry and detailed legal analysis, Backpage's preemption argument is not "facially conclusive," and does not defeat <u>Younger</u> abstention.

### 2.   Bad Faith

Backpage maintains that abstention is improper because AG Hawley acted in bad faith. (ECF No. 34 at 33-38).  Specifically, Backpage alleges that AG Hawley:  (1) granted it an extension of time to respond to the CID and then filed the state-court action before that time expired; and (2) issued the CID despite his knowledge that the CDA shielded Backpage from liability for violations of state law.  <u>Id.</u>  AG Hawley counters that the bad-faith exception to <u>Younger</u> does not apply in this case "because the State has an appropriate basis for believing that the CDA does not bar all potential claims against Backpage."  (ECF No. 21 at 13).  In addition,

AG Hawley denies Backpage's claim that his office granted Backpage an extension of time to respond to or comply with the CID and asserts that Backpage "mischaracterizes" previous statements made by AG Hawley and his predecessor, Attorney General Chris Koster.  (ECF No. 42 at 9-11).

"While the Supreme Court has not ruled out use of the bad faith exception in civil cases, it has never directly applied the exception in such a case and we have only recognized it in the criminal context."  Tony Alamo Christian Ministries v. Selig, 664 F.3d 1245, 1254 (8th Cir. 2012) (quoting Aaron, 357 F.3d at 778).  Under this exception, federal courts should not abstain under Younger if "bad faith, harassment, or some extraordinary circumstance . . . would make abstention inappropriate."  Aaron, 357 F.3d at 778 (quotation omitted).  "[I]ntervention by federal courts in ongoing state proceedings requires that the 'circumstances must be "extraordinary" in the sense of creating an extraordinary pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation.'"  Id. at 779 (quoting Moore v. Sims, 442 U.S. 415, 433 (1979)).

Even assuming the bad faith exception is available in the civil context, AG Hawley's alleged agreement to extend Backpage's deadline for responding to the CID and subsequent filing of the state-court action prior to that deadline does not constitute bad faith or harassment for purposes of the bad-faith exception to Younger abstention.  See Aaron, 357 F.3d at 779 n.7 (evidence that the defendant failed to respond to the plaintiff's counterproposal, misrepresented the status of negotiations, and failed to provide plaintiffs notice of a public hearing did not demonstrate bad faith).  Nor do AG Hawley's public statements regarding his intention to "shut down" Backpage render Younger abstention improper.  See, e.g., Postscript Enters., Inc. v. Peach, 878 F.2d 1114, 1116 (8th Cir. 1989) (owner of adult bookstore did not establish bad faith

even though the prosecuting attorney publicly declared he would "run [the plaintiff] out of business.").

To the extent that Backpage claims that AG Hawley necessarily acted in bad faith because he knew the CDA preempted the state-court action, the Court has found that Backpage's preemption argument is not "facially conclusive."  Moreover, AG Hawley asserts that the State "has a strong evidentiary basis for concluding that the CDA does not apply to Backpage's conduct."  (ECF No. 21 at 15).  According to AG Hawley, the CDA does not protect Backpage from liability under the MMPA because Backpage does not simply publish unlawful content but creates and develops it.  (Id).

In support of its position that AG Hawley acted in bad faith, Backpage alleges that "[AG Hawley] and his office have *admitted* Section 230 bars state prosecution of Backpage."  (ECF No. 34 at 35) (emphasis in original).  Backpage points to a letter to Congress from multiple states' attorneys general that AG Hawley signed on August 16, 2017.  Contrary to Backpage's argument, however, the statements in that letter do not constitute an admission that the CDA bars any state action, especially when considered in light of AG Hawley's separate letter to Congress of the same date.[13]  (ECF Nos. 35-1, 42-1).  In that letter, AG Hawley wrote:

> Today, I have joined 49 other Attorneys General in sending you a letter urging Congress to amend the [CDA] to clarify that the CDA does not preempt valid state and territorial criminal laws directed at suppressing the scourge of human trafficking on the Internet. . . . I write separately to emphasize that nothing in our letter to you or in the CDA itself purports to prevent authorities from investigating and pursuing those who engage in human trafficking on the Internet by providing *content* for internet communications related to human trafficking.

---

[13] Backpage also argues that a July 2013 multi-state letter signed by former Attorney General Koster evidences AG Hawley's knowledge that the CDA precludes his "tak[ing] action of the sort in question here."  (ECF Nos. 34 at 35; 14-5).  However, Backpage cites no authority to support its position that AG Hawley is "bound by his predecessor's admissions."  (ECF No. 34 at 35).

(ECF No. 42-1) (emphasis in original).   Based on the record, the Court finds there was insufficient evidence of bad faith to support application of an exception to <u>Younger</u> abstention.

**IV.    *Conclusion***

For the reasons stated herein, the Court holds that abstention is proper in this case. Because the Court abstains on <u>Younger</u> grounds, it declines to address AG Hawley's argument that Backpage failed to state a claim upon which relief can be granted.

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that AG Hawley's motion to dismiss (ECF No. 21) is **GRANTED**.

**IT IS FURTHER ORDERED** that Backpage's motion for preliminary injunction (ECF No. 11) and second motion for preliminary injunction (ECF No. 48) are **DENIED** as moot.

**IT IS FINALLY ORDERED** that Backpage's motion to file an amended complaint (ECF No. 51) is **DENIED** as moot.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this <u>28th </u>day of November, 2017