**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISON**

| | |
|---|---|
| BACKPAGE.COM, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:17-CV-01951-PLC |
| | ) |
| JOSHUA D. HAWLEY, in his official | ) |
| capacity as Attorney General of the | ) |
| State of Missouri, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**NON-PARTY RESPONDENT DAVIS WRIGHT TREMAINE LLP'S
MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS**

Defendant's motion for sanctions ("Motion") against the law firm of Davis Wright Tremaine LLP ("DWT") is not just legally and factually baseless; it is an affront to our adversary system of law.[1]   The Attorney General asks this Court to impose sanctions against DWT, a prominent international law firm, under the Court's inherent authority and 28 U.S.C. § 1927, based (1) on plea agreements entered on April 5, 2018 by Carl Ferrer (former CEO of Backpage.com, LLC ("Backpage")) on behalf of himself and Backpage, and (2) on certain purported "red flags" that, the Attorney General claims, suggest that Backpage's "lawsuit against the Attorney General was based on false statements and was calculated to mislead this Court and impede a lawful investigation."  (Mot. at 1.)

The Attorney General's arguments lack the slightest foundation in law, are factually bankrupt, and his Motion should be denied without further proceedings.  His theory for awarding

---

[1]   After spending the majority of his brief (pages 1-16) discussing proposed sanctions against Backpage.com ("Backpage"), Attorney General Hawley seeks sanctions against DWT (pages 16-24).

sanctions threatens the very nature of our adversarial system because, if successful, any attorney could be sanctioned if his client denies the allegations in sworn statements during the attorney's representation but later changes his position in a negotiated plea agreement.

In this case, DWT asserted well-established legal positions, upheld by numerous decisions across the country and supported by numerous sworn statements from Mr. Ferrer.  However, after Mr. Ferrer reached a plea deal and agreed to plead guilty on behalf of himself and the company, the Attorney General is seeking sanctions against DWT for professionally and vigorously representing a client that the Attorney General deems unsavory.

The Attorney General's Motion sets forth no legal rationale that could support sanctions against DWT.[2]  It cites no relevant authority and the Motion does nothing more than rehash arguments made earlier in this litigation.  Backpage's complaint (and motions for preliminary injunction) appropriately challenged the Attorney General's broad civil investigative demand ("CID") and threats to prosecute under the Missouri Merchandising Practices Act, RSMo. § 407.010, *et seq.* ("MMPA") for publishing third-party content on Backpage.com because the Attorney General's actions violated rights and immunities prescribed by the Communications Decency Act, 47 U.S.C. § 230 ("Section 230" or "CDA") and the U.S. Constitution.  Backpage's lawsuit and challenge to the Attorney General's investigation was strongly supported by the First Amendment and Section 230 of the CDA, and by hundreds of decisions holding that Section 230 preempts state-law civil and criminal claims against websites and publishers based on content created by third parties.  *See Hill v. StubHub, Inc.*, 727 S.E.2d 550, 558 (N.C. Ct. App. 2012) (noting that as of 2012 there have been over 300 reported federal and state lower court decisions

---

[2] This Motion is essentially a copy-cat of a Motion for Sanctions filed in *Backpage.com, LLC  v. Dart*, Case No. 15-cv-06340 (N.D. Ill.) by the Cook County, Illinois Sheriff, which is fully briefed and awaiting decision.

addressing immunity claims advanced under Section 230 and "[a]ll but a handful of these decisions find that the website is entitled to immunity from liability"); (*see also* Compl. at ¶ 2.)  The well-established body of law supporting the position DWT advocated includes a decision from Judge Mummert in this district in *M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041 (E.D. Mo. 2011) (holding that claims were foreclosed by Section 230 despite allegations that Backpage's structure and operation, alleged knowledge of misuse of the website for illegal activity, or exercise of editorial functions to screen and prevent improper content, somehow could establish culpability).

The Attorney General's Motion is based on nothing more than speculation and innuendo. The sole bases for the Attorney General's argument are (1) to pit Mr. Ferrer's statements in the April 2018 plea deals against assertions made earlier in this litigation (which were supported by repeated sworn statements of Mr. Ferrer and from Backpage's general counsel), and (2) to raise again the same arguments and accusations the Attorney General asserted before, now saying that they constitute "red flags" that sworn statements were untrue while others' accusations and arguments – which courts have uniformly rejected for more than six years – were valid.  Indeed, the so-called "red flags" are little more than pejorative descriptions of legally appropriate actions taken in other cases (like resisting overbroad subpoenas from the U.S. Senate and successfully defending against criminal charges in California).  Whatever may have precipitated Mr. Ferrer's decision to cut a deal, the fact that the April 5, 2018 plea agreements differ from Mr. Ferrer's numerous earlier sworn statements, provides no basis for imposing sanctions on DWT.  The Attorney General provides only speculation to assert that DWT did not "engage in a thorough investigation before filing its vexatious lawsuit."  (Mot. at 17.)  This falls far short of what is

required even to suggest sanctions.[3]

In sum, because the Attorney General does not come close to showing that counsel acted vexatiously or with the requisite bad faith, this Motion is unsupported by the law and does not meet the standards in this Court and the Eighth Circuit to impose sanctions on counsel.

## FACTUAL BACKGROUND

Backpage.com, LLC operated as an online-classified advertising service through which users in all 50 states were able to post ads in a variety of categories, including local places, buy/sell/trade, automotive, rentals, real estate, jobs, dating, and services.[4]  (Compl. at ¶¶ 17-20.) Until January 9, 2017, the Backpage.com website also included an adult category, which had several subcategories, including one for escorts as well as numerous other lawful services (such as strip clubs and exotic dancers).  (*Id.* at ¶ 20.)

For more than eight years, certain politicians, including state attorneys general, targeted and tried to censor online-classified advertising sites.  (*Id.* at ¶¶ 24-27.)  For example, in September 2010, several state attorneys general, including Chris Koster, the former Attorney General of Missouri, began a campaign to shut down Backpage's adult advertising category.  (Dkt. 14, Ex. H.)  In 2013, the National Association of Attorneys General ("NAAG"), acknowledging that federal courts have interpreted Section 230 to prevent state and local law enforcement agencies from pursuing or investigating Backpage for state-law civil or criminal claims, sent a letter to

---

[3] Under Rule 4-1.6(b)(3) of the Missouri Supreme Court Rules, an attorney may use privileged communications in defense of a claim challenging the attorney's conduct. See E.D. Mo. L.R. 12.02.  DWT is not using privileged information in response to the Motion at this time; it is unnecessary because Attorney General Hawley has established no basis for the Motion under the law or the facts. However, DWT respectfully reserves all its rights, including rights under Rule 4-1.6(b)(3).

[4] As of April 6, 2018, the Backpage.com website was seized and disabled by the United States government.

Congress advocating for an amendment to Section 230.  (*Id.*, Exs. E, J.)  Despite repeated efforts by state legislatures and state attorneys general to censor Backpage.com, courts across the country consistently held that the ads in Backpage's adult section are protected by the First Amendment, that the sale of online advertising is a lawful activity, and that Backpage's actions as an online publisher were protected under Section 230 of the Communications Decency Act.[5]

In April 2017, the Attorney General instituted an investigation of Backpage by issuing press statements before contacting Backpage or serving a CID on Backpage.  (Dkt. 12 at 14.)  On May 10, 2017, the Attorney General's office served a CID on Backpage and Mr. Ferrer purporting to investigate Backpage for the content of users' ads, but asserting that the Attorney General was not investigating the advertisers responsible for the content.  (*See* Dkt. 14, Ex. A.)  The CID demanded a broad scope of information on operations, policies and practices of Backpage for a seven-year period with no explanation for this breadth or how it had anything to do with the MMPA's proscriptions concerning consumer practices.  (*See id.*)  The CID also provided that it would "be subject to disclosure to other state and federal law enforcement agencies pursuant to an information sharing agreement," (*id.*) despite that the MMPA prohibits such disclosure.  *See* RSMo. § 407.060.1.

The CID probed activities that are constitutionally and statutorily protected – Backpage's publication, review, and screening of ads.  (*See* Dkt. 12 at 12.)  On July 7, 2017, Backpage and Mr. Ferrer timely responded and objected to the CID on behalf of themselves and all other putative

---

[5] *See, e.g.*, *Doe ex rel. Roe v. Backpage.com, LLC*, 104 F. Supp. 3d 149, 156 (D. Mass. 2015), *aff'd sub nom. Jane Doe No. 1 v. Backpage.com, LLC* 817 F.3d 12, (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017); *Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015), *cert. denied*, 137 S. Ct. 46 (2016); *M.A.*, 809 F. Supp. 2d at 1041. *See also Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097 (D.N.J. Aug. 20, 2013); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805 (M.D. Tenn. 2013); *California v. Ferrer*, No. 16FE019224, 2016 WL 7237305 (Cal. Super. Ct. 2016).

"Subjects" of the CID.  (Dkt. 14, Ex. O.)  On July 11, 2017, Backpage filed suit in this Court to

protect its and its users' federal statutory and constitutional rights.  (*See* Compl.)  On July 27, 2017,

Backpage moved for a preliminary injunction (Dkt. 12) supported by the declaration of Elizabeth

McDougall, the General Counsel of Backpage (Dkt. 13.)[6]  In support of the motion for preliminary

injunction (Dkt. 12), Ms. McDougall stated, among other things:

- "Backpage.com provides users with an automated interface through which they can create and post an advertisement.  The interface provides open-text fields into which users must enter their own content for the title and description of the advertisement. . . .  Backpage does not require any specific content in ads.  However, users are required to provide an email address to Backpage in order to post to the website."  (Ex. A at ¶ 7.)

- "Backpage expressly prohibits illegal content and activity on its site.  Users must affirmatively agree to Terms of Use and any applicable Posting Rules for a particular category before posting an ad.   Among other prohibitions, Backpage.com's Terms of Use prohibit ads for illegal services or posting 'any material . . . that in any way constitutes or assists in human trafficking' or 'any solicitation . . . for any illegal service exchanging sexual favors for money or other valuable consideration.'"  (*Id.* at ¶ 8.)

Ms. McDougall also noted that Backpage.com includes hyperlinks to a "Safety" page, which

includes phone numbers and links for the National Center for Missing and Exploited Children and

other law enforcement and support resource centers *(id.* at ¶ 9); Backpage employed monitoring

in an effort to prevent and remove improper user posts, including using automated filters to scan

and bar content based on potentially inappropriate terms and employing human moderators to

manually review ads and to block or remove content that violates the website's terms (*id.* at ¶ 10);

Backpage works with law enforcement officials to preserve evidence, provide testimony, and

remove posts and block users at the request of officials (*id.* at ¶ 11).

---

[6] Elizabeth McDougall was general counsel for Backpage (f/k/a Village Voice Media LLC) since 2012.  Prior to that, Ms. McDougall practiced law at Perkins Coie LLP for three years.  She graduated from New York University School of Law and has been licensed to practice law since 1993.  Her declaration filed in this case (Dkt. 13) has been attached without exhibits as Exhibit A.

Ms. McDougall's declaration is entirely consistent with sworn statements Mr. Ferrer made repeatedly in cases around the country in which DWT served as counsel for Backpage.[7]  Mr. Ferrer also averred that users provided all content for ads they posted on the website and that Backpage had long imposed and enforced rules to prevent improper content or misuse of the site, including Backpage.com reviewing and screening ads to prevent improper conduct.  (Ex. E at ¶ 10.)  He explained that the website used automated filters and retained upwards of 100 individuals who acted as moderators to screen and block ads.  (*Id.* at ¶ 14.)  He emphasized Backpage.com's extensive efforts to work with law enforcement officials to prevent misuse of the website and his and Backpage's efforts to cooperate with law enforcement to investigate and prosecute individuals who did misuse the site.  (*Id.* at ¶¶ 16-17.)

During this litigation, Attorney General Hawley signed a NAAG letter to Congress again urging it to amend Section 230 because "courts have interpreted [the law] to render state and local authorities unable to take action against . . . Backpage.com."  (Dkt. 35, Ex. A at 1-2.)  The letter urged Congress to amend Section 230(e)(1) to exempt from immunity all "State, or Territorial" criminal statutes.  (*Id.* at 5-6.)

On August 1, 2017, the Attorney General moved to dismiss the Complaint for lack of jurisdiction under *Younger v. Harris*, 401 U.S. 37 (1971). (Dkt. 21; Dkt. 34.) On November 28, 2017, this Court granted Defendant's motion.  (Dkt. 59.)  In making its decision, the Court did not

---

[7]  Some of these declarations (without exhibits) are attached as Exhibits B through E including Mr. Ferrer's declarations from *Backpage.com, LLC v. McKenna*, No. 2:12-00954-RSM (W.D. Wash.) (filed on June 4, 2012) (Ex. B); *Backpage.com, LLC v. Cooper*, No. 3:12-cv-00654 (M.D. Tenn.) (filed on June 27, 2012) (Ex. C); *Backpage.com, LLC v. Hoffman*, No. 2:13-cv-03952-DMC (D.N.J.) (filed on June 26, 2013) (Ex. D); and *Backpage v. Dart*, No. 1:15-cv-06340 (N.D. Ill.) (filed on July 21, 2015) (Ex. E). Mr. Ferrer filed similar declarations in two other actions, *Backpage.com, LLC v. Healey*, No. 16-CV-10236-ADB-SEALED (D. Mass.) (filed on Feb. 4, 2015); *In re Subpoenas to Produce Documents to Grand Jury Nos. 15823 and 16093*, No. GJ12-172 (W.D. Wash.) (filed on June 27, 2012).

address the substantive arguments in Backpage's complaint or motion for preliminary injunction. On December 27, 2017, Backpage appealed the Court's *Younger* dismissal and filed its opening appellate brief on March 6, 2018.  (*See* Mot., Ex. C.)  On April 16, 2018, the Attorney General filed his appellate brief.  DWT withdrew from representation of Backpage after Mr. Ferrer's guilty pleas, Backpage did not file a reply brief, and the Eighth Circuit dismissed the appeal based on Backpage's failure to prosecute.

On April 5, 2018, in a federal criminal action in Arizona, Mr. Ferrer signed a plea agreement on behalf of Backpage.com, LLC and other corporate entities controlled by Mr. Ferrer to one count of money laundering (18 U.S.C. § 1956(h)).  (*Id.*, Ex. A.)  On April 9, 2018, Backpage.com, LLC pled guilty in Texas state court to one count of human trafficking.[8]  (*Id.*, Ex. B.)  On May 9, 2018, DWT and Thompson Coburn moved to withdraw from representation in this action and in Backpage's pending appeal before the Eighth Circuit.  (Dkt. 68.)  On July 10, 2018, this Court granted DWT and Thompson Coburn's motion to withdraw.  (Dkt. 69.)  On July 16, 2018, the Attorney General filed this Motion against Backpage and DWT.  (Dkt. 73.)[9]

---

[8] Neither DWT nor Thompson Coburn was counsel to Mr. Ferrer or Backpage in connection with these plea agreements.

[9] DWT has over 40 years of experience litigating the constitutionality of restrictions on advertising and First Amendment matters. Commercial Speech & Advertising, DAVIS WRIGHT TREMAINE LLP, https://www.dwt.com/practices/CommercialSpeechAdvertising/ (last visited July 31, 2018).  DWT has "been active in case after case across the country promoting First Amendment protections for commercial speech."  *Id.*  DWT has been recognized for its success in defending "free speech rights online for multiple clients" and "affirming the breadth of immunity protections in Section 230 of the Communications Decency Act."  Law360 Names Davis Wright Tremaine's Media & Entertainment Team a "Practice Group of the Year, DAVIS WRIGHT TREMAINE LLP, https://www.dwt.com/Law360-Names-Davis-Wright-Tremaines-Media--Entertainment-Team-a-Practice-Group-of-the-Year-01-26-2017/ (last visited July 31, 2018).  In May 2017, DWT received the Freedom of the Press award, issued by the Reporters Committee for Freedom of the Press, citing the firm's "unceasing dedication to the First Amendment."  https://www.dwt.com/Davis-Wright-Tremaines-Media-and-First-Amendment-Team-Honored-Reporters-Committee-for-Freedom-of-the-Press-05-24-2017/ (last visited July 31, 2018).

## ARGUMENT

The Attorney General's motion for sanctions against DWT is fundamentally illegitimate. It identifies no legal basis under which sanctions might be appropriate and asks for remedies that are not authorized by the law.[10]  The Motion calls for sanctions under the Court's inherent authority and 28 U.S.C. § 1927, but does not identify the standard for imposing sanctions pursuant to inherent authority.[11]  Likely the reason for this omission is that the Motion does not come close to making legal or factual arguments that meet the demanding standards for imposing sanctions.

The Motion's speculative and unsupported accusations are the opposite of what the law requires.  The Supreme Court has stressed that a district court's inherent powers "must be exercised with restraint and discretion."  *Chambers*, 501 U.S. at 44-45.  The Eighth Circuit in particular has cautioned that "[t]he imposition of sanctions is a serious matter and should be approached with circumspection." *O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir. 1987).  Sanctions are not appropriate unless counsel had no colorable legal or factual arguments to support their

---

[10] The Attorney General seeks three types of civil sanctions against DWT: (1) a restitution fund for Backpage's alleged Missouri victims; (2) the Attorney General's fees and costs; and (3) this Court's expenses.  (Mot. at 24-25.)  The restitution for the benefit of Backpage's alleged victims is wholly inappropriate under controlling law.  (Mot. at 24.)  When warranted, civil sanctions pursuant to the Court's inherent authority and Section 1927 are limited to fees incurred because of attorney misconduct.  As the Supreme Court recognized in *Goodyear Tire & Rubber Co. v. Haeger*, when a federal court exercises its inherent authority to sanction bad-faith conduct by ordering counsel to pay the other side's legal fees, the award is limited to the fees the innocent party incurred solely because of the misconduct.  137 S. Ct. 1178, 1183-84 (2017); *Austin v. Hanover Ins. Co.*, 720 F. App'x 319, 320 (8th Cir. 2018).  Similarly, 28 U.S.C. § 1927 only provides for sanctions "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Nothing in Section 1927 permits an award of restitution to a third party.  To award punitive sanctions that go further than redressing the opposing party for its fees, "a court would need to provide procedural guarantees applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof.'" *Goodyear Tire*, 137 S. Ct. at 1186.  The Attorney General's lack of any evidence and gross speculation that DWT knew or should have known about Backpage's alleged misconduct are insufficient under any standard, let alone the "beyond a reasonable doubt" standard.

[11] The Motion cites only one case on this point, *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), which is discussed below.

claims or defenses, *see Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1083 (8th Cir. 2017), and

the court affirmatively finds that counsel acted in subjective bad faith.  *Gas Aggregation Servs.,*

*Inc. v. Howard Avista Energy, LLC*, 458 F.3d 733, 739 (8th Cir. 2006).

Similarly, the Eighth Circuit has cautioned that 28 U.S.C. § 1927 must be strictly

construed" because it "is penal in nature" and must be interpreted "so that it does not 'dampen the

legitimate zeal of an attorney in representing his client.'"  *Lee v. L.B. Sales*, Inc., 177 F.3d 714,

718 (8th Cir. 1999) (quoting *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d

1414, 1416 (5th Cir.1994)).  The Eighth Circuit has also stated that the language of Section 1927

"appears to require both a finding of objectively unreasonable behavior and a finding of bad faith."

*NAACP-Special Contribution Fund v. Atkins*, 908 F.2d 336, 340 (8th Cir. 1990).  Sanctions for

attorney's fees and costs under Section 1927 require, at the very least, a finding that an attorney's

conduct "manifest[s] either intentional or reckless disregard of the attorney's duties to the court."

*See Lee*, 177 F.3d at 718.[12]

The Attorney General can point to no authority that supports the imposition of sanctions

against attorneys for advancing arguments that have been accepted by numerous courts, as is the

case here.  Here, the positions taken on behalf of Backpage were far more than "colorable," they

are and have been the prevailing law under Section 230 generally for the last 30 years and as to

---

[12] Under controlling case law, courts should not impose sanctions when a legal theory is plausible, has been accepted by another judge, or is a reasonable extension of existing law.  *See Wolfchild v. Redwood Cty.*, 24 F.3d 761 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 447 (2016); *E.E.O.C. v. Trans States Airlines, Inc.*, 462 F.3d 987, 996 (8th Cir. 2006) (affirming denial of attorney's fees under § 1927 because plaintiffs had colorable argument in support of claims).  Courts in this district have also recognized that sanctions against counsel pursuant to the court's inherent authority or Section 1927 are not appropriate when the claims were legally supported and counsel did not unreasonably multiply the proceedings in a case.  *See, e.g., Nelson v. Special Admin. Bd. of St. Louis Pub. Sch.*, No. 4:11CV00904 AGF, 2013 WL 5423104, at *2 (E.D. Mo. Sept. 26, 2013) (denying sanctions under Section 1927); *Majors v. Prof'l Credit Mgmt., Inc.*, No. 4:17-CV-00270-AGF, 2018 WL 1251914, at *2 (E.D. Mo. Mar. 12, 2018) (denying sanctions under the court's inherent authority and under Section 1927).

Backpage.com specifically in no fewer than 10 cases in the last eight years.  In *Wolfchild v. Redwood Cty.*, the Eighth Circuit reversed the district court's award of sanctions pursuant to the district court's inherent authority, Section 1927, and Rule 11 because counsel set forth colorable factual and legal arguments to support their claims.  824 F.3d at 761.  In making its decision, the Eighth Circuit held that the district court abused its discretion in sanctioning counsel for good-faith arguments calling for modifications or extensions of existing law.  *Id.* at 771.  Here, the Attorney General is seeking sanctions against counsel for making legal and factual arguments that have been accepted by numerous courts across the country.

## I.      Backpage's Suit Was Well Grounded in Established First Amendment and Statutory Law.

The Attorney General complains that DWT attorneys acted vexatiously and unreasonably multiplied the proceedings in three ways: (1) by filing the lawsuit; (2) "forcing" the Attorney General to respond to two motions for preliminary injunctive relief; and (3) "forc[ing] the Attorney General to fully litigate an appeal (except for oral argument)."  (Mot. at 21-22.)  The Attorney General relies primarily on Mr. Ferrer's after-the-fact guilty plea and argues Mr. Ferrer's position *after* April 6, 2018 should be a basis for evaluating the legal and factual basis for the complaint filed in July 2017.  Not only is this logically and legally unsound, but it ignores the established basis for the complaint under statutory law and the First Amendment.

The Attorney General does not come close to meeting the elevated legal standard with respect to DWT for at least three reasons:

<u>First</u>, Backpage's lawsuit challenging the CID was supported by Section 230 and hundreds of federal court decisions broadly interpreting Section 230 to provide criminal and civil immunity to Internet websites and publishers – like Backpage – based on content created by third parties.  (*See* Compl. at ¶ 2.)  This precedent includes a decision in this judicial district involving Backpage.

In *M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*, Judge Mummert held that claims were foreclosed by Section 230 despite allegations that Backpage knew its website was misused for illegal activity and participated in developing the content of illegal ads.  809 F. Supp. 2d at 1041. The court also rejected the argument that Backpage's exercise of editorial functions to screen and prevent improper content could somehow establish culpability as a content provider.  *Id.* at 1058. The court explained that a website is only responsible for content if it in some way *specifically* develops what is unlawful about the content.  *Id.* at 1051.  The court found that Backpage was fully immune under Section 230 regardless of any actions to screen or edit user-submitted content, so long as a third party willingly provides the content.  *Id.* at 1058.  Numerous subsequent decisions reaffirmed this immunity.[13]  Because of this long line of precedent, as a matter of law, the Attorney General cannot make the required showing that DWT's arguments that the Attorney General's CID was impermissible and preempted by Section 230 were implausible (much less that the arguments were asserted in bad faith).

Second, before and after this lawsuit was filed, the Missouri Attorney General's Office agreed that state proceedings (like the AG's investigation here) were preempted by federal law. (Dkt. 14, Ex. E; Dkt. 35, Ex. A at 1-2.)  Two Missouri Attorneys General (including Hawley) acknowledged that Section 230 precluded state authorities from investigating or prosecuting websites – and Backpage.com in particular – based on third-party content, and urged Congress to change the law.  (*See* Dkt. 14, Ex. E; Dkt. 35, Ex. A at 1-2.)  The Attorney General cannot claim that Backpage's lawsuit challenging the investigation was in bad faith for having offered the same interpretation of Section 230 immunity that Attorney General Hawley (and Attorney General

---

[13] *See* cases cited *supra* note 5.

Koster before him) had recognized.

Third, while the Attorney General cites a few cases that discuss awarding sanctions, he does not point to a single case – in the Eighth Circuit or anywhere else – in which sanctions were issued against a law firm in remotely similar circumstances. The legal positions DWT advocated were not merely "colorable" or "plausible" (which would have been enough) – they are the law.[14]

## II.    The Attorney General's Efforts to Impose Sanctions on DWT are Factually Baseless.

The Attorney General's arguments are entirely based on the premise that Mr. Ferrer's plea agreements (accepting terms from the government in exchange for agreeing to cooperate in prosecuting others) should be taken as true, and DWT should be charged with knowledge that his half dozen prior sworn statements were all false.  In doing so, the Attorney General ignores the Supreme Court's "time-honored teaching" and the federal courts' widespread reluctance to permit reliance on a party's guilty plea to inculpate others because such pleas are "inherently unreliable." *United States v. Vera*, 893 F.3d 689, 692-93 (9th Cir. 2018) (quoting *United States v. Pimentel-Lopez*, 859 F.3d 1134, 1144 (9th Cir. 2016) and citing *Williamson v. United States*, 512 U.S. 594 (1994)).  As the case law recognizes, defendants signing plea agreements "may adopt facts that the government wants to hear in exchange for some benefit, usually a lesser sentence" and are inclined to "point[] their fingers" at others to obtain leniency.  *Vera* 893 F.3d at 692.  Here, the Attorney General goes further, asserting that counsel in an unrelated civil case should be charged with bad faith because of Mr. Ferrer's *post hac* criminal plea deals (despite that his assertions would not

---

[14] While the Attorney General seeks sanctions for having to respond to the opening appellate brief in this matter, he ignores the fact that the appeal (and this Court's decision dismissing the case) was based on the applicability of the *Younger* abstention doctrine.  Neither the dismissal order nor the appeal turned on any alleged "false statements" in Backpage's complaint.  Accordingly, the Attorney General fails to show (and cannot demonstrate as a matter of law) how Backpage appealing a pure legal issue was inappropriate.

even be admissible against other parties).

Attorney General Hawley's Motion offers no evidence and nothing but aspersion and speculation. The Attorney General speculates about what DWT "should have known" based on Mr. Ferrer's recent plea agreements and supposed "red flags" that Attorney General Hawley previously identified in his Motion to Dismiss and were publicly known. (*See* Dkt. 21.) At bottom, the Attorney General is arguing (without any support) that DWT should have anticipated that Mr. Ferrer would contradict averments he has made in half-a-dozen prior cases.

As noted, sanctions under the Court's inherent authority or Section 1927 are not appropriate where an attorney had colorable factual and legal arguments to support the claims. *Wolfchild*, 824 F.3d at 761. "[A] claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999) (citations omitted). When considering sanctions against attorneys under the court's inherent authority and Section 1927, "[t]he question is whether a reasonable attorney . . . could have concluded the facts supporting the claim *might be established*, not whether such facts actually *had been established*." *Id.* (emphasis in original).

In *Schlaifer*, the Second Circuit reversed the imposition of sanctions pursuant to the district court's inherent authority and Section 1927. *Id.* at 341. The district court imposed sanctions after finding that the plaintiff's attorneys knew or had the means of knowing there was no factual basis for their client's fraud claims. *Id.* at 337. The Second Circuit reversed, and held that the attorneys had a colorable basis to bring the suit because they had some basis for their subjective belief in the merits of the case. *Id.* at 340-41. Moreover, the Second Circuit found that the attorneys did not act in bad faith by filing the lawsuit and permitting their client's representative to testify despite the fact that he had previously given contradictory testimony in a prior proceeding. *Id.* at 339.

The court explained that even though the testimony was inconsistent, it did not demonstrate bad faith because there was evidence supporting the initial testimony. *Id.* The present case presents a far stronger reason to reject sanctions, where the client signed repeated and consistent sworn statements in numerous cases attesting to the facts, and only later contradicted himself as part of a plea deal.

Attorney General Hawley's Motion is largely founded on Mr. Ferrer's statements in his plea agreements.  The Attorney General assumes that (1) everything said in the plea agreements must be true, (2) everything Mr. Ferrer said in prior declarations, testimony, and elsewhere must have been false and (3) that DWT somehow knew the prior statements were false. (*See* Mot. at 6-11, 13, 19.)  Mr. Ferrer's statements in connection with his negotiated plea agreements are inconsistent with his prior sworn testimony in certain respects, and someday he may need to answer questions about those contradictions.  Regardless, Mr. Ferrer's recent decision to plead as he has – and whatever may be his motivations for doing so – cannot establish that it was inappropriate for DWT to rely on his and Backpage's general counsel's six-plus years of prior sworn statements.

Attorney General Hawley alleges that DWT attorneys attempted to "mislead this court and impede a lawful investigation" with "false statements." (Mot. at 1.)  However, the purported "false statements" were supported by DWT's prior six years of representing Backpage and were supported by affidavits and sworn testimony by Mr. Ferrer and Ms. McDougall.  For example, the Attorney General argues that Backpage's counsel misled the Court by stating that Backpage "was not responsible for the content of any ads for illegal human trafficking on its website." (Mot. at 2, 4-6).  However, both Mr. Ferrer and Ms. McDougall repeatedly stated in this and prior proceedings that "Backpage does not require any specific content in ads." (Ex. A at ¶ 7; Ex. D at ¶ 4).  In this case, as well, Ms. McDougall stated that Backpage does not create the ads:  "Backpage.com

provides users with an automated interface through which they can create and post an advertisement. The interface provides open-text fields into which users must enter their own content for the title and description of the advertisement. . . ." (Ex. A at ¶ 7).

The Attorney General further argues that Backpage's counsel misled the Court by stating that Backpage "never knowingly permitted illegal ads to remain on its website because it deleted all ads for illegal human trafficking that came to its attention." (Mot. at 2, 5-6, 19.) Again, both Mr. Ferrer and Ms. McDougall have stated that Backpage prohibited ads for illegal services or postings and that Backpage monitored and removed improper posts. (Ex. A at ¶ 8; Ex. D at ¶¶ 7-8.) Indeed, Backpage's Terms of Service expressly "prohibits illegal content and activity on its site. Users must affirmatively agree to Terms of Use and any applicable Posting Rules for a particular category before posting an ad." (Ex. A at ¶ 8.) And, Ms. McDougall stated that "Backpage personnel review reported ads and abuse emails, and evaluate the concerns and determine appropriate action, including potentially removing or blocking content or users and/or reporting to appropriate law enforcement authorities." (*Id.* at ¶ 9.)

The Attorney General also alleged that Backpage's counsel misled the Court by maintaining that Backpage "worked closely with law enforcement officials to investigate individuals who misused its website." (Mot. at 2, 10-11, 20.) Again, the Attorney General's claim is directly refuted by statements from both Mr. Ferrer and Ms. McDougall. (Ex. A at ¶ 8; Ex. D at ¶¶ 7-8.) These statements shared many examples of communications with law enforcement in Missouri and across the country commending Backpage's efforts in reporting illegal activity. (Ex. D at ¶ 11.) The lawyers at DWT had every right to rely on the consistent, sworn statements from their client over a period of several years, and the Attorney General cites nothing to contradict that fundamental reality of the practice of law.

Attorney General Hawley does not point to any record evidence, any extant statement of Mr. Ferrer, or anything else that was inconsistent with positions taken by DWT in this case when they were asserted.  Instead, the Attorney General contends there were "red flags," from which DWT should have inferred that Mr. Ferrer was allegedly lying, and apparently, that he would later contradict his averments.  Attorney General Hawley's attempts to cast aspersions based on his argued inferences rather than actual evidence underscores why his Motion is improper.  Implicitly conceding that he has no evidence that DWT had any reason to believe any statements in the Backpage litigation were false, the Attorney General states: "Even assuming that counsel did not know its assertions on behalf of Backpage were false, counsel made those assertions in the face of numerous red flags."  (Mot. at 17.)  However, all four of the alleged "red flags" are either factually wrong or legally irrelevant, and they provide no basis for imposition of sanctions by the Court.

First, the Attorney General contends that DWT attorneys should have recognized that Backpage was engaging in human trafficking activity or other actions not immunized by federal law when Mr. Ferrer was arrested on October 6, 2016 for human trafficking charges and arrest warrants were issued for other Backpage officials.  (*Id.*)  However, somewhat incredibly, at the same time he improperly accuses DWT of acting in disregard of the facts, the Attorney General fails to inform this Court that those criminal charges against Mr. Ferrer and the other Backpage officials were dismissed on December 9, 2016 as "legally deficient under Section 230 of the Communications Decency Act . . . and devoid of **any facts** that constitute public offenses under the criminal statutes."  *Ferrer*, 2016 WL 7237305 at * 2 (Cal. Super. Ct. Dec. 9 2016) (emphasis added).  The Attorney General's argument (Mot. at 17) that "probable cause" or criminal charges should override legal theories supported by sworn facts from a client is utterly inconsistent with the adversarial system.  This is especially true when the charges are ultimately dismissed as were

17

these California charges against Mr. Ferrer.  Lawyers must be able to defend their clients without the fear of later being subjected to sanctions should they happen to lose the case and/or if the client pleads guilty.

Second, Attorney General Hawley claims that the December 23, 2016 indictments for allegedly misrepresenting Backpage's procedures to credit card companies "should have cautioned Backpage's counsel that they needed to conduct a thorough factual inquiry before making the spurious allegations in this case."  (Id. at 17-18.)  The Attorney General suggests – without providing any evidence – that Backpage's counsel failed to conduct a thorough factual inquiry regarding the alleged credit card misrepresentations.  Once again, the Attorney General's argument attempts to subvert the legal profession by requiring attorneys to credit allegations in indictments over judicial rulings and six-plus years of prior sworn statements by their client.  The Attorney General – once again – fails to mention that the charges in the second indictment relating to prostitution were dismissed on Section 230 grounds and that the court merely allowed the charges relating to the credit card companies to proceed to trial.  See California v. Ferrer, No. 16FE024013, slip op. (Cal. Super. Ct. Aug. 23, 2017) (Ex. F.)

Third, the Attorney General cites as a red flag the report of the U.S. Senate Permanent Subcommittee of Investigations ("PSI Report").[15]  (Mot. at 18-19.)  During the Subcommittee

---

[15] In an abundance of caution, we want to make the Court aware of Jenner & Block's earlier involvement as counsel for amici—the DKT Liberty Project, the CATO Institute and the Reason Foundation—in support of Backpage's former CEO, Carl Ferrer, in Ferrer v. Permanent Subcommittee on Investigations, 856 F.3d 1080 (D.C. Cir. 2017).  (Ex. G.)  The Ferrer appeal arose out of subpoenas issued by the U.S. Senate Permanent Subcommittee on Investigations to Mr. Ferrer.  Jenner & Block's filing of the amicus brief in 2016 does not give rise to a conflict in this matter and does not affect DWT's response to the Motion.  Indeed, as the Court can see, the amicus brief took similar positions to those the DWT lawyers took in vigorously defending the First Amendment rights at issue in this litigation.

investigation, attorneys from DWT and Akin Gump LLP represented Backpage.[16]  The Attorney

General's claim that the PSI Report demonstrates that Backpage specifically designed its website's

operations to facilitate and conceal known criminal activity is merely a rehash of the theme dozens

of courts have rejected under Section 230 generally and as to Backpage specifically.[17]  The same

is true for the Attorney General's allegations that the PSI Report demonstrates Backpage created

or revised illegal ads, as this Report simply describes editorial functions that courts have repeatedly

held fall within Section 230 immunity.  The Attorney General does not disclose that the Senate

Subcommittee expressly declined to receive or consider millions of pages of documents supporting

Backpage's cooperation with law enforcement, [18] or that courts rejected the "concealment theory"

the subcommittee expounded even after the PSI report was released.  *Ferrer*, No. 16FE024013 at

11-17 (Ex. F.)

　　　The Attorney General submitted the PSI Report with his Motion to Dismiss arguing that

Backpage scrubbed buzzwords from ads and then published the edited versions of those ads on its

---

[16] The attorneys from Akin Gump were primarily responsible for interacting with the Subcommittee on behalf of Backpage.  Steve Ross and Stanley Brand, both of whom were formerly the general counsel to the U.S. House of Representatives, were the Akin Gump lawyers leading the team.

[17] *See* cases cited *supra* note 5.

[18] The Attorney General's argument assumes (without any basis) that everything in the PSI Report is accurate.  But the Subcommittee did not allow Backpage to submit evidence that demonstrated it cooperated with law enforcement.  *PSI v. Ferrer*, 199 F. Supp. 3d 125, 131-32 (D.D.C. 2016), *vacated as moot*, 856 F.3d 1080 (D.C. Cir. 2017) (subcommittee staff instructed counsel to "please hold off on processing or producing what you described as more than five million pages of *law enforcement subpoena related material*.") (emphasis in original).  There is a reason why such reports are often not accepted as evidence. The trustworthiness and reliability of Congressional hearings and reports is "problematic." *Anderson v. City of New York*, 657 F. Supp. 1571, 1579 (S.D.N.Y. 1987).  Courts are generally skeptical about the "evidence" contained in Congressional reports because Congressional hearings do not offer the same procedural protections as a court hearing and the Congressional hearings "are frequently marred" by elected officials' political considerations that have a tendency to influence any factual findings or conclusions included in the report. *See id; see also Pearce v. E.F. Hutton Grp., Inc.*, 653 F. Supp. 810, 814 (D.D.C. 1987) (noting that political considerations might affect the findings of Congressional reports).

website.  (Dkt. 21 at 4.)  The Attorney General cites to the PSI Report again in this Motion and argues that DWT "willfully ignored overwhelming public evidence that the assertions it was making were false."  (Mot. at 20-21.)  But, the Attorney General provides no reason for the Court or DWT to credit the PSI Report.  In fact, the portions of the PSI Report quoted by the Attorney General are from a NAAG letter and from one of the California indictments.  (*See* Mot. at 18.) Thus, the PSI report is simply repeating allegations as opposed to reporting an independent finding. Regardless, multiple courts considered the allegations regarding Backpage's moderation practices discussed in the PSI Report and concluded that such editorial practices are protected under Section 230.  *See, e.g.*, *M.A.*, 809 F. Supp. 2d at 1047-55; *Ferrer*, No. 16FE024013 at 11-17 (Ex. F.)

Even after the PSI Report was issued, the Attorney General's "concealment" theory was expressly rejected in *California v. Ferrer*, where the court explained that Backpage's editorial prerogatives "do not alter the fact the [alleged content manipulation] premises liability on the decisions that Backpage is making as a publisher with respect to third-party content." (Ex. F at 14-15.) Years earlier, another court in this district rejected claims that Backpage erected a "veil of legality" for "illegal sexual contact" ads.  *See M.A.*, 809 F. Supp. 2d at 1044, 1050.  The Attorney General provides no evidence that DWT "willfully ignored" the evidence in the Report.  Rather, DWT argued in good faith against the Report's interpretation of Backpage's editorial practices before this and other courts.

Fourth, Attorney General Hawley argues that DWT attorneys should have known about Backpage's alleged illegal actions through the documents published by the Washington Post on the same day this lawsuit was filed.  (Mot. at 19-20.)  However, as stated in Backpage's opposition to the motion to dismiss, the Attorney General's arguments regarding these documents "are based on distorted characterizations, lack any connection to Missouri (or the United States, for that

matter), and have no effect as to Section 230 immunity." (Dkt. 34 at 24.) The Attorney General (once again) argues that the news article reporting that Avion, an overseas contractor for Backpage, was allegedly used to "generate . . . illegal content on Backpage's website" confirmed that Backpage was involved in rampant illegal conduct. (Mot. at 19.)

As Attorney General Hawley well knows from the documents published by the Washington Post and from Backpage's opposition to his motion to dismiss (Dkt. 34), these allegations are irrelevant for at least three reasons. First, Avion's marketing concerned Backpage-affiliated websites "outside the U.S.," which obviously cannot form the basis for any investigation by the Attorney General here. (Dkt. 34 at 25.) Second, the Attorney General's theory again rests on the same flawed premise that all adult ads are "illegal advertisements" for "illegal commercial sex." *Id.* Third, the materials the Attorney General offers do not show that Backpage or Avion ever created any content; they show that Avion contacted individuals who had posted ads on other websites (*e.g.*, in the U.K. or South Africa), and offered them the opportunity to post the same ads on a Backpage-related website, at no charge. *Id.* This is not content creation. *See Ferrer*, 2016 WL 7237305, at *3, 4, 6 (when "third parties provided the content for the original ad[s]," republication is not content creation and is entitled to Section 230 immunity). Again, the Attorney General has provided no evidence showing that DWT relayed alleged false statements knowing those statements were false. DWT argued in good faith and advocated for its client against the Attorney General's interpretation of the Washington Post article.

The Attorney General's argument – that DWT should have disregarded the sworn testimony of its client representatives on the basis of an unsubstantiated newspaper article – is absurd and would subvert the legal profession. Lawyers have the fundamental duty to zealously

represent the best interests of their client.  To allow a newspaper article to override a client's sworn testimony would be an abdication of a lawyer's most fundamental duty.

## III.    An Imposition of Sanctions Will Chill Lawyers' Advocacy When Opposing the Government.

The Attorney General's theory for seeking sanctions undermines our adversarial system and the legal profession.  If sanctions are imposed on DWT for petitioning this Court in good faith that its former client's constitutional rights were being violated by the Attorney General's actions, there will be a chilling effect on "vigorous and ingenious advocacy, especially in matters of controversial character" or other First Amendment litigation.  *See Aetna Cas. & Sur. Co. v. Fernandez*, 830 F.2d 952, 953 (8th Cir. 1987); *see also Kraemer v. Grant Cnty.*, 892 F.2d 686, 690 (7th Cir. 1990) (reversing sanctions award and holding that sanctions cannot be allowed to thoroughly undermine zealous advocacy); *United States v. Figueroa-Arenas*, 292 F.3d 276, 279 (1st Cir. 2002) ("a judge's power to sanction . . . cannot be used to chill vigorous but legitimate advocacy").  Litigation tactics are not sanctionable so long as they are "colorable," even if they do not prevail.  *See Aetna Cas. & Sur. Co.*, 830 F.2d at 953.  But here, where the Attorney General is seeking sanctions against a law firm for advancing legal theories that numerous courts have accepted, a sanctions finding would be deeply chilling.

The Attorney General's Motion must fail.  Allowing sanctions on a litigant's attorneys who pursued good faith claims would handicap future claims against the government.[19]  Even unsuccessful complaints should be protected because they advance some First Amendment interests.  *See BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516 (2002).  "Like successful suits,

---

[19] Indeed, since 2012, DWT has worked with approximately 25 of the finest law firms in the country in representing Backpage in First Amendment cases.  Merely representing an unpopular client does not subject a law firm to sanctions.

unsuccessful suits allow the public airing of disputed facts." *Id* at 532 (internal citations omitted). Moreover, unsuccessful suits "promote the evolution of the law by supporting the development of legal theories that may not gain acceptance the first time around." *Id.* But where the government seeks to punish firms that have *successfully* challenged unconstitutional actions, an award of sanctions would be a powerful weapon that could be used as a form of retaliation.

## IV.     The Attorney General's Motion for Rule 11 Sanctions is Meritless.

The Attorney General's final, equally baseless,  argument is that if the Court denies the current sanctions motion, the Court should allow him to file a new motion under Rule 11 without compliance with Rule 11's mandatory 21-day safe harbor provision.  (Mot. at 23-24.)  For all the reasons stated above, no sanction of any kind is warranted.  The Attorney General's request that the 21-day safe harbor provision be waived is equally groundless. The safe-harbor provision is mandatory and any Rule 11 motion would be untimely because the case is over.  The Eighth Circuit requires that district courts and attorneys follow Rule 11's safe harbor provision. *See Gordon v. Unifund  CCR Partners*, 345 F.3d 1028, 1029-30 (8th Cir. 2003).   In *Noonan v. CACH, LLC*, No.4:15-CV-1305 CAS, 2016 WL 1641405, at *3 (E.D. Mo. Apr. 26, 2016), Judge Shaw denied a Rule 11 motion filed after the case was over and explained that courts across our country "have uniformly denied Rule 11 motions where, as here, a motion was not filed until after the case was dismissed."  Because the Attorney General's request for Rule 11 sanctions against Backpage's attorneys has never been filed, any Rule 11 motion would be untimely and must be denied because it would be in violation of the safe harbor provision of Rule 11.  It also would be baseless.

## CONCLUSION

For the foregoing reasons, this Court should deny Attorney General Hawley's Motion for Sanctions without any further proceedings.

Dated:  August 6, 2018.                    Respectfully submitted,


By: */s/ Jeffrey D. Colman*
Jeffrey D. Colman, 0491160IL
   (*Pro Hac Vice*)
John R. Storino, 6273115IL
   (*Pro Hac Vice*)
LaRue L. Robinson, #67261MO
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
+1 312 222 9350 (Telephone)
+1 312 527 0484 (Facsimile)
jcolman@jenner.com
jstorino@jenner.com
lrobinson@jenner.com


Robert T. Haar #30044MO
Lisa A. Pake #39397MO
HAAR & WOODS, LLP
1010 Market St., Suite 1620
St. Louis, MO 63101
314-241-2224 (Telephone)
314-241-2227 (Facsimile)
roberthaar@haar-woods.com
lpake@haar-woods.com

Attorneys for Non-Party Respondent
Davis Wright Tremaine LLP

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 6th day of August, 2018, the foregoing was filed electronically with the Clerk of the Court to be served on all counsel of record by operation of the Court's CM/ECF filing system.


*/s/ Jeffrey D. Colman*