**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BACKPAGE.COM, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case no. 4:17-CV-1951 PLC** |
| | ) | |
| **ERIC SCHMITT,[1]** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on Defendant Missouri Attorney General Eric Schmitt's "Motion for Criminal Contempt and Civil Sanctions Against Backpage.com, LLC" (hereinafter, "motion for sanctions") [ECF No. 73]. Defendant seeks sanctions against Plaintiff Backpage.com, LLC ("Backpage") and its former counsel, Davis Wright Tremaine LLP ("DWT"). Defendant also asks (in his reply brief) for permission to engage in discovery related to DWT. [ECF No. 96 at 20-22]. For the reasons that follow, the Court denies Defendant's motion for sanctions and Defendant's request for discovery.

## I. Factual and Procedural Background

In May 2017, Defendant issued civil investigative demands ("CIDs") to Backpage, Backpage's CEO Carl Ferrer, and two other corporate officers for the purpose of investigating possible violations of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, et seq. [ECF No. 1] The objective of the CIDs was to investigate whether Backpage used "deception, fraud, false promise, misrepresentation, unfair practice, or the concealment,

---

[1] Eric Schmitt, who became Missouri's Attorney General in January 2019, is automatically substituted for the originally named Defendant, Josh Hawley, who was Missouri's Attorney General when this lawsuit was filed. Federal Rule of Civil Procedure 25(d).

suppression, or omission of material fact in connection with the sale or advertisement" of "commercial sexual conduct, other sexually oriented services, massage services, dating services and other merchandise." [ECF No. 21-2 at 1]

In June 2017, Defendant filed in the Circuit Court of St. Charles County a "Petition for Order to Enforce" the CID against Backpage. [ECF No. 21-5] During the first two weeks of the next month, Backpage filed in this Court a "complaint for injunctive and declaratory relief," asking the Court to "enjoin and declare unlawful" Defendant's efforts to investigate and prosecute it under the MMPA. [ECF No. 1] In the complaint, Backpage argued that Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, barred state law claims against internet websites and publishers arising from content created by a third party. [Id.] Backpage also claimed that Defendant's investigation and the CID violated: the rights of Backpage and its users under the First and Fourteenth Amendments; Backpage's rights under the Fourth, Fifth, and Fourteenth Amendments; and the MMPA. [Id.]

Approximately two weeks later, on July 27, 2017, Backpage filed a motion for preliminary injunction based on its purported immunity under the CDA and its constitutional rights under the First, Fourth, and Fifth Amendments. [ECF No. 11] In support, Backpage presented declarations, including one from Backpage General Counsel Elizabeth McDougall, stating under penalty of perjury that Backpage had no role in creating or editing advertisements and took active measures to prevent any illicit activity on its website. [ECF No. 13]

On August 1, 2017, Defendant moved to dismiss Backpage's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [ECF No. 21], and filed within two weeks his opposition to Backpage's motion for preliminary injunction [ECF No. 26]. In the motion to dismiss, Defendant argued, among other things, that the Court should abstain and

dismiss the case pursuant to Younger v. Harris, 401 U.S. 37 (1971). Backpage filed its brief in opposition to Defendant's motion to dismiss by the end of August [ECF No. 34], and its reply in support of its motion for preliminary injunction on September 7, 2017 [ECF No. 39]. Defendant filed a reply supporting his motion to dismiss on September 13, 2017 [ECF No. 42]. At the end of September 2017, the Court heard oral argument on Defendant's motion to dismiss and held a Rule 16 conference with counsel for the parties. [See ECF Nos. 24, 31, and 46]

Approximately one month later, on October 30, 2017, Backpage filed a second motion for preliminary injunction challenging newly enacted MMPA regulations [ECF No. 48] and a motion for leave to file a first amended complaint addressing the "validity and enforcement of the new regulations" [ECF No. 51 at 1]. Defendant filed his opposition to those two motions on November 27, 2017 [ECF Nos. 56 and 58].

On November 28, 2017, this Court abstained on Younger grounds, granting Defendant's motion to dismiss on the basis of Younger, and denied as moot Backpage's first and second motions for preliminary injunction, as well as Backpage's motion to file a first amended complaint. [ECF No. 59] On December 27, 2017, Backpage filed its notice of appeal of this Court's dismissal of the complaint to the Eighth Circuit.[2] [ECF No. 60]

In early April 2018, Ferrer signed on behalf of Backpage a plea agreement in the United States District Court for the District of Arizona ("federal plea agreement") and a plea agreement on behalf of Backpage in a Texas state court. [ECF Nos. 73-1, 73-2; 87-1, 87-2] In the Texas state court case, Backpage pleaded guilty to "trafficking of persons" and "engaging in organized

---

[2] In March 2018, Backpage filed an appellant's brief, arguing that "the CID falls outside the extraordinary circumstances for Younger abstention" and, even if the case fell within one of the Younger categories, Defendant's "pursuit of Backpage exhibits bad faith, further disqualifying it under abstention principles." Backpage.com, LLC v. Hawley, No. 18-1096, 2018 WL 1210582 (8th Cir. Mar. 5, 2018) (Appellant's Brief). Defendant filed his brief on appeal in April 2018. Backpage.com, LLC v. Hawley, No. 18-1096, 2018 WL 1914005 (8th Cir. Apr. 16, 2018) (Respondent's Brief).

criminal activity." [ECF No. 73-2]  Backpage pleaded guilty to the Class C felony of "money laundering conspiracy" under the federal plea agreement.

The federal plea agreement states the parties intend that Backpage "will cease to exist or operate" upon entry of the guilty plea; and that Backpage "agrees to pay full restitution" of no more than $500 million "to all victims directly or proximately harmed" by Backpage's conduct. [ECF No. 73-1 at 2-4]  The federal court also entered, upon agreement of the parties, an order forfeiting Backpage's assets.  [ECF No. 73-2]  Backpage's counsel in this lawsuit did not represent Backpage in either the Texas state court criminal case or the Arizona federal court criminal case that resulted in Backpage's guilty pleas and the forfeiture of its assets.[3]  [ECF No. 90 at 8 n.8]

In May 2018, Backpage's counsel in this lawsuit, DWT and local counsel, Thompson Coburn LLP ("Thompson Coburn"), moved to withdraw from this case "based on professional considerations, and because of recent events and communications from Carl Ferrer…." [ECF No. 68].  This Court granted DWT and Thompson Coburn leave to withdraw as Backpage's counsel in the instant case. [ECF No. 69]  The Eighth Circuit also granted Backpage's counsel

---

[3]  DWT represented Ferrer in a 2016 California state criminal case filed against Ferrer and two other individuals, in which the defendants were charged with conspiracy to commit and committing financial crimes and "pimping" activities related to the Backpage website.  [See ECF Nos. 73-5 and 73-6].  In August 2017, the California state court concluded:  "[i]f and until Congress sees fit to amend the immunity law, the broad reach of section 230 of the Communications Decency Act . . . applies to those alleged to support the exploitation of others by human trafficking."  California v. Ferrer, No. 16FE024013, slip op. at 18 (Cal. Super. Ct. Aug. 23, 2017) [ECF No. 90-6].  Based on that conclusion, the California court dismissed numerous charges alleging that Ferrer and the other defendants conspired to "pimp" and "pimped" related to the Backpage website.  [Id.]  The California state court further decided, however, not to dismiss "the offenses pertaining to allegations that the [d]efendants themselves engaged in financial crimes, to include bank fraud and money laundering to disguise their business dealings" related to the Backpage website.  [Id.]  The federal plea agreement Backpage entered into in the United States District Court for the District of Arizona mentions the parties' expectation that "around the time [Backpage] enters a guilty plea in [the Arizona federal case], . . . Ferrer will enter guilty pleas to Backpage-related charges in California and Texas state court[s]." [ECF No. 73-1 at 2-3]  The record in this case does not include materials disclosing what occurred in the California state court case against Ferrer individually; or disclose that Ferrer was a defendant in either the Arizona federal case or the Texas state case involving criminal charges against Backpage.

leave to withdraw from the appellate proceeding, and dismissed Backpage's appeal for failure to prosecute. [ECF Nos. 70, 73-4]

Less than a week after dismissal of Backpage's appeal, Defendant filed his motion for sanctions asking this Court to order: (1) Backpage to show cause "why it should not be held in criminal contempt" and (2) Backpage and its counsel, DWT,[4] to show cause why the Court should not impose civil sanctions against them. [ECF No. 73 at 24]. For civil sanctions, Defendants asks the Court to require Backpage and DWT to pay Defendant's fees and costs, as well as compensation to the Court "for its expenses." [ECF No. 73 at 24-25]. For criminal contempt sanctions, Defendant asks the Court to require Backpage to pay unspecified amounts as a fine and as "a fee into a restitution fund to be set up" for Backpage's Missouri victims.[5] [ECF No. 73 at 13 and 24; ECF No. 96 at 7 n.2] According to Defendant, sanctions "are warranted," under either the Court's inherent power with respect to Backpage and DWT or under 28 U.S.C. § 1927 with respect to DWT only, "because the . . . criminal plea agreements entered by Backpage [through] its CEO reveal that this lawsuit against [Backpage] was based on false statements and was calculated to mislead this Court and impede a lawful investigation." [Id. at 1]

If the Court declines to issue sanctions pursuant to its inherent power or 28 U.S.C. § 1927, Defendant argues in the alternative that the Court "should grant leave to expedite a motion for Rule 11 sanctions." [Id. at 23] Specifically, Defendant asks the Court either to "decrease the safe-harbor period [in Rule 11(c)(2)] from 21 days to zero days, and . . . deem this motion

---

[4] Defendant does not seek sanctions against Thompson Coburn.

[5] In his motion, Defendant asks the Court to impose civil sanctions on both Backpage and DWT, including their payment of an unspecified amount "into a restitution fund to be set up for the benefit of . . . Backpage's victims in Missouri." [ECF No. 73 at 24] In his reply, Defendant clarified that his request for payment into a restitution fund for Missouri victims was based only on his "request for criminal contempt sanctions against Backpage." [ECF No. 96 at 7 n.2] Therefore, the Court understands Defendant does not ask that civil sanctions against DWT include any payment of an amount into a Missouri victims' restitution fund.

[for sanctions] to be a timely motion for sanctions under Rule 11" or to "consider Rule 11 sanctions <u>sua</u> <u>sponte</u> without any delay" under Rule 11(c)(3). [<u>Id.</u> at 23-24]

Backpage opposes Defendant's motion for sanctions on the grounds that "the relief requested…would conflict with Backpage's cooperation requirements with federal authorities who have shut down Backpage.com, LLC and seized and forfeited its assets." [ECF No. 87 at 1] Additionally, Backpage asserts that, by requesting "criminal sanctions in the form of a victim's restitution fund," Defendant essentially seeks "a ***judgment*** on the merits of a case that has not been filed, where no discovery has been conducted, where no evidence has been heard, and without any due process…." [<u>Id.</u> at 2 (emphasis in original)] Backpage further argues that "criminal sanctions [are] inappropriate because Defendant has not shown that a lesser sanction of civil sanctions would not be equally effective as criminal sanctions." [<u>Id.</u> at 3]

DWT filed a memorandum in opposition to Defendant's motion for sanctions as a non-party respondent.[6] [ECF No. 90] DWT asserts that it did not act in bad faith or "vexatiously and unreasonably" because Backpage's complaint and motions for preliminary injunction were well-grounded in established First Amendment and statutory law. [<u>Id.</u>] DWT further contends that neither "Mr. Ferrer's *post h[o]c* criminal plea deals" on behalf of Backpage nor the "red flags" identified by Defendant establish DWT's "knowledge that [Backpage officials'] . . . sworn statements [made prior to and during the pendency of this lawsuit] were all false." [<u>Id.</u> at 13] Finally, DWT argues that Rule 11's twenty-one-day "safe harbor provision is mandatory" and "any Rule 11 motion would be untimely because the case is over." [<u>Id.</u> at 23]

## II.    Legal Standard

---

[6] Thompson Coburn, Backpage's local counsel, also filed opposition to Defendant's motion for sanctions. [ECF No. 88] In its opposition, Thompson Coburn acknowledges that Defendant did not file his motion for sanctions "against [Thompson Coburn] or its attorneys." [<u>Id.</u> at 1] Thompson Coburn wrote "separately to note [its] position on the motion" for sanctions, because "the motion does at times refer generally to 'counsel.'" [<u>Id.</u>] Because Defendant does not seek sanctions against Thompson Coburn, the Court declines to address Thompson Coburn's arguments.

A federal court has discretion to impose sanctions pursuant to its inherent authority, 28 U.S.C. § 1927, or Rule 11.  Duranseau v. Portfolio Recovery Assocs., LLC, 644 Fed.Appx. 702, 706 (8th Cir. 2016) (unpublished).  However, "[t]he imposition of sanctions is a serious matter and should be approached with circumspection."  O'Connell v. Champion Int'l Corp., 812 F.2d 393, 395 (8th Cir. 1987).

### III.    Discussion

Defendant asks the Court to sanction DWT pursuant to the Court's inherent authority and 28 U.S.C. § 1927.  Defendant also argues that the Court should exercise its inherent power to sanction and hold Backpage in criminal contempt "because Backpage repeatedly lied to this Court."  [ECF No. 73 at 12]  Defendant contends, in the alternative, that the Court "should grant leave to expedite a motion for Rule 11 sanctions" against both Backpage and DWT.  [Id. at 23]  Backpage and DWT counter that the imposition of sanctions on either Backpage or its counsel is improper and unwarranted.

### A.  Sanctions against DWT

Defendant moves the Court to sanction DWT pursuant to the Court's inherent authority and 28 U.S.C. § 1927 because DWT "falsely asserted on behalf of Backpage that Backpage was not directly involved in any human trafficking conduct and that it engaged only in lawful activity."  [ECF No. 73 at 17]   DWT counters that sanctions are not appropriate because DWT "had colorable factual and legal arguments to support the claims" that Defendant's investigation violated the CDA and First Amendment.  [ECF No. 90 at 14]

A federal court has the inherent power "to supervise and 'discipline attorneys who appear before it' and discretion 'to fashion an appropriate sanction for conduct which abuses the judicial process,' including assessing attorney fees…."  Vallejo v. Amgen, Inc., 903 F.3d 733, 749 (8th

Cir. 2018) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)).  The assessment of an adversary's attorney's fees as a sanction under a court's inherent power requires that the court find the sanctioned person demonstrated bad faith.  Willhite v. Collins, 459 F.3d 866, 870 (8th Cir. 2006) (affirming the district court's sua sponte imposition of sanctions against an attorney while remanding for further consideration of the sanctions imposed) (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 766-67 (1980)).  Therefore, "a finding of 'bad faith' is specifically required in order to assess attorneys' fees pursuant to the court's inherent authority" to impose sanctions.  Ideal Instruments, Inc. v. Rivard Instruments, Inc., 243 F.R.D. 322, 335 (N.D. Iowa 2007) (citing Chambers, 501 U.S. at 45-46).

Additionally, Section 1927 provides that, upon concluding an attorney "so multiplie[d] the proceedings in any case unreasonably and vexatiously[, a court may] require[ the attorney] to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Sanctions under Section 1927 are appropriate when an attorney's conduct, "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."  Wagner v. Gallup, Inc., 788 F.3d 877, 891 (8th Cir. 2015) (internal quotation marks omitted) (quoting Clark v. UPS, Inc., 460 F.3d 1004, 1011 (8th Cir. 2006).  "Because section 1927 is penal in nature, it should be strictly construed so that it does not 'dampen the legitimate zeal of an attorney in representing his client.'"  Lee v. L.B. Sales, Inc., 177 F.3d 714, 718 (8th Cir. 1999) (quoting Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc., 38 F.3d 1414, 1416 (5th Cir. 1994)).

In his motion, Defendant argues that DWT knew or should have known when it filed the complaint, motions for preliminary injunction, and appeal that Backpage was engaging in conduct not protected by the CDA and United States Constitution.  [ECF No. 73 at 17]

Defendant maintains that DWT knew or should have known that Backpage was involved in human trafficking because there were "numerous red flags that would have cautioned any reasonable attorney to engage in a thorough investigation before filing its vexatious lawsuit." [Id.] Examples of these "red flags," Defendant asserts, include: Ferrer's arrest on sex trafficking charges in October 2016; Ferrer's indictment two months later for misrepresenting Backpage to credit card companies; a report by a U.S. Senate permanent subcommittee released in January 2017 detailing Backpage's human trafficking activity; and documents published by the *Washington Post*, which revealed that Backpage edited and/or created ads for illegal services. [Id. at 17-20]

Although DWT may have known about ongoing investigations into Backpage's activities, that does not establish that DWT knew in 2017 that Backpage's officers were lying about the company's involvement in financial crimes and sex trafficking. See Backpage.com, LLC v. Dart, No. 1:15-CV-6340, slip op. at 7 (N.D. Ill. Mar. 25, 2018) (denying motion to sanction DWT because there was no evidence that DWT "made or facilitated a specific representation of fact that was known to be untrue when it was made"). The "red flag" materials are not analogous to Backpage's or its officers' guilty pleas, i.e., sworn statements by Backpage officers, sufficient to raise questions about the veracity of previous representations regarding Backpage's activities. Defendant has not identified sworn statements of Backpage's officers or similar credible evidentiary material that DWT had access to in 2017 that necessarily alerted DWT that its presentation of Backpage's position(s) in the materials and arguments submitted in this case were inaccurate or without merit. As the Court in Dart found, Defendant "has not come up with the smoking gun showing that DWT knew, or was deliberately avoiding, the truth about Backpage's practices" at the time DWT represented Backpage before this Court. Id.

Due to the absence of evidentiary material constituting a "smoking gun" regarding the truthfulness of Backpage's officers' declarations available in 2017, there is no basis for imposing sanctions on DWT under this Court's inherent power based on Defendant's argument that DWT failed to delve further into information provided by Backpage. Defendant's suggestion that a "reasonable inquiry" would have uncovered Backpage's deception is unavailing. [ECF No. 73 at 17] In his motion, Defendant argues DWT may not avoid the Court's imposition of sanctions under the Court's inherent power through any failure of DWT to "conduct a reasonable inquiry of the factual and legal basis for a claim before filing" the lawsuit. [ECF No. 73 at 17]. In support, Defendant cites Coonts v. Potts, 316 F.3d 745, 753 (8th Cir. 2003), a decision addressing sanctions under Rule 11 only. In his reply, Defendant acknowledges the "reasonable inquiry" language is from Rule 11, and argues an attorney's failure to conduct a "reasonable inquiry" supports the imposition of sanctions under a court's inherent power, citing circuit and district court cases outside the Eighth Circuit. [ECF No. 96 at 8]. Absent either United States Supreme Court or Eighth Circuit authority, the Court declines to use the Rule 11 "reasonable inquiry" standard rather than a "bad faith" standard for imposition of attorney's fees as sanctions under the Court's inherent power.

Moreover, the record does not establish a basis for challenging any inquiry DWT made prior to filing this lawsuit and related materials. DWT filed those materials between July 11, 2017 and October 30, 2017 (or December 27, 2017 if this Court should consider the filing of Backpage's notice of appeal). The record shows that, since June 2012, Ferrer provided declarations in other lawsuits supporting many false statements at issue in this case. [ECF Nos. 90-2, 90-3, 90-4, 90-5] In addition, Backpage's general counsel McDougall provided a July 2017 declaration supporting the perspective that Backpage's activities were lawful and protected

as claimed in this lawsuit. [See ECF Nos. 13, 90-1] Furthermore, during DWT's representation of Backpage in this case, Backpage produced material, such as its terms of service and communications with law enforcement [see e.g., ECF No. 13-1, 13-2, 13-3, and 13-4], which arguably demonstrate Backpage's commitment to prevent and report illicit activity on its website.[7] The 2018 Backpage guilty pleas that raise concerns about earlier contrary sworn statements made by Backpage's personnel were not made until months after DWT filed this lawsuit and related materials on behalf of Backpage in 2017 and after the Court dismissed the case on November 28, 2017. Without more, the record does not support a conclusion that the April 2018 guilty pleas show that DWT knew or should have known that sworn statements made by Backpage personnel in and prior to 2017 were false.

In his reply, Defendant argues that Ferrer's and McDougall's declarations do not support the claims in this case and may not be reasonably relied on by counsel to avoid sanctions. [ECF No. 96 at 8-17] In support of his position, Defendant cites one decision in this circuit, other than Coonts, supra, another Rule 11 sanctions decision: Bryant v. Brooklyn Barbeque, 130 F.R.D. 665, 669-70 (W.D. Mo.), aff'd, 932 F.2d 697 (8th Cir. 1991).[8] [ECF No. 96 at 10] As noted earlier, Defendant has not provided a compelling rationale for application of the inquiry standard developed under Rule 11 to determine the appropriateness of sanctions under the Court's inherent power. Additionally, in Bryant, the district court inferred "from the papers counsel had filed . . . that counsel knew he had not conducted a reasonable inquiry of the facts and the law

[7] DWT was not the only party deceived by Backpage's false statements prior to the April 2018 guilty pleas. When presented with claims that Backpage was facilitating prostitution and human trafficking and concealing the nature of its activities from the credit card companies with which it did business, the Seventh Circuit found "it [was] unclear that Backpage is engaged in illegal activity." Backpage.com, LLC v. Dart, 807 F.3d 229, 233 (7th Cir. 2015).

[8] Defendant also cites to cases outside the Eighth Circuit, which predominantly address sanctions under Rule 11 only. [ECF No. 96 at 10-12].

prior to filing the original complaint, but filed it prematurely so as to benefit from . . . publicity generated" by a sentencing of one of the defendants. Bryant, 932 F.2d at 699. Here, nothing DWT filed raises an inference that DWT failed to inquire, insufficiently inquired, or had an improper purpose in filing the complaint and other materials on behalf of Backpage in 2017. See, e.g., Miller v. Bittner, 985 F.2d 935, 939 (8th Cir. 1993) (an attorney is entitled to rely on his or her client's objectively reasonable statements as to factual claims). The record does not support a conclusion DWT acted in bad faith while representing Backpage in this lawsuit.

In addition to arguing DWT acted in bad faith, Defendant asserts that sanctions under Section 1927 are appropriate because DWT vexatiously raised legal arguments that "lacked any merit" and were "not even colorable"[9] [ECF No. 96 at 17-19]. The Court disagrees under the circumstances here. The Court did not reach the merits of Backpage's claims because the Court abstained from considering the merits, a resolution that Defendant vigorously urged. Additionally, in addressing Defendant's request for Section 1927 sanctions, the Court engaged in a cursory review of the case law cited in Backpage's complaint and finds it supports Backpage's CDA and First Amendment claims. The Court does not engage in further analysis of Backpage's legal arguments under the circumstances of this closed case, which was dismissed relatively promptly after filing and without considering the merits of Backpage's claims, because no material in the record raises a question about the veracity of factual statements or establishes that any challenged conduct by DWT reached the level of culpability needed to support an award of Section 1927 sanctions for any vexatious and unreasonable conduct. See, e.g., Clark, 460 F.3d at 1007, 1010-11 (affirming Section 1927 sanctions imposed on an attorney who, in relevant part, submitted an unnecessarily voluminous filing in an attempt, as the district court found, to "force

---

[9] A claim is "colorable" if it has "some possible validity." Sabhari v. Mukasey, 522 F.3d 842, 844 (8th Cir. 2008) (per curiam) (internal quotation marks and citation omitted).

the opposition to either yield to its position or be crushed under a great weight of misstated factual assertions"); Gundacker v. Unisys Corp., 151 F.3d 842, 849 (8th Cir. 1993) (affirming Section 1927 sanctions imposed on an attorney for, in relevant part, repeatedly disobeying the district court's orders and making false representations); Perkins v. General Motors Corp., 965 F.2d 597, 600-02 (8th Cir. 1992) (affirming Section 1927 sanctions imposed on an attorney for, among other things, filing documents she knew contained false statements); Sexton v. City of Hannibal, No. 2:09cv0008 AGF, 2011 WL 864968, at 1 (E.D. Mo. Mar. 10, 2011) (parties "assumed aggressive and at time combative postures" during course of the proceeding but attorney misconduct for sanctions under Section 1927 requires "a different degree of culpability" than the attorney conduct challenged here).  Without more, the Court concludes DWT did not act vexatiously and unreasonably in pursuing this lawsuit and presenting Backpage's positions in 2017.

In his motion, Defendant also seeks an award against DWT of monetary sanctions beyond an adversary's attorneys' fees and costs.  [ECF No. 73 at 16]  Specifically, Defendant requests that DWT reimburse the Court "for [its] expenses."  [Id.]  Defendant provides no description of and no authority for the payment of the Court's "expenses" in this case.  Without deciding whether the Court has the authority under the Court's inherent power or Section 1927 to require an attorney to pay an amount beyond those associated with an adversary's defense associated with the sanctionable conduct, the Court declines to order DWT to pay the Court's "expenses" as a sanction under the circumstances here.

Concluding DWT did not engage in conduct sufficiently culpable to support an assessment against it of Defendant's costs, attorney's fees and expenses as a sanction under

either the Court's inherent power or Section 1927, the Court denies Defendant's motion for sanctions against DWT.

### B. Sanctions against Backpage

Defendant also requests the Court exercise its inherent authority to impose civil sanctions and criminal contempt sanctions against Backpage. [ECF No. 73] In response, Backpage argues that the sanctions requested by Defendant are excessive and would interfere "with federal authorities' efforts to seize and distribute [its] forfeited assets." [ECF No. 87 at 5]

Federal courts possess certain inherent powers "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186 (2017) (quotation omitted). This inherent authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Id. (quotations omitted). Sanctions may include outright dismissal of a lawsuit and assessment of attorney fees. See Chambers, 501 U.S. 32, 43 (1991). "Because of their very potency, inherent powers must be exercised with restraint and discretion." Id. at 44.

Defendant claims that Backpage premised this action upon "a central false edifice," namely, that "all of Backpage's conduct was supposedly protected by the CDA and the First Amendment, so [Defendant] could not even *investigate* Backpage, much less bring an enforcement action against it." [ECF No. 73 at 5 (emphasis in original)] Defendant further asserts that Backpage "repeatedly lied to this Court," when it stated: "that it had no active involvement in human trafficking, that it went to great pains to remove illegal content from its website, and that it was forthcoming with merchants and consumers about all its activities." [ECF No. 73 at 12]

In support of his position that Backpage knew those assertions were false, Defendant points to Backpage's plea agreements with the United States Government and the State of Texas. [ECF Nos. 73-1, 73-2] According to Defendant, in the federal plea agreement, Backpage: "admitted under oath that its purpose was to 'knowingly facilitate' human trafficking on its website, that it took every opportunity to conceal its actions from law enforcement, and that it constructed a labyrinth of shell organizations to 'fool credit card companies into believing' they were doing business with somebody else."[10] [ECF No. 73 at 13] Citing Backpage's plea bargain agreement with the State of Texas, Defendant states that Backpage "also admitted that at least some of its victims were minors." [Id.] Defendant acknowledges, however, that "collecting a monetary fine [from Backpage] may be difficult." [Id. at 15]

Backpage does not challenge the substance of Defendant's motion for sanctions. Rather, Backpage states that it has "shut down its website operations," it has "agreed to forfeit all corporate assets to the United States," and the United States "already is establishing a [victim] restitution fund and mechanism that will be national in scope." [ECF No. 87 at 2, 3, 4] In support of its position that it has no assets with which to pay a monetary sanction, Backpage attaches the April 2018 plea agreement and May 2018 preliminary order of forfeiture entered in the criminal case against Backpage in the United States District Court for the Northern District of Arizona. [ECF Nos. 87-1 and 87-2, respectively] Backpage warns: Defendant's "attempted collection of forfeited property would interfere with federal forfeiture efforts and Backpage's agreement to forfeit" its property. [Id. at 4]

---

[10] In the federal plea agreement, Backpage admitted that "a great majority of [its] advertisements [were], in fact, advertisements for prostitution services" and Backpage "knowingly facilitated the state-law prostitution crimes being committed by Backpage's customers." [ECF No. 73-1 at 11] Backpage further admitted that it revised advertisements to conceal "the true nature of the services being offered," and it engaged in "various money laundering offenses." [Id. at 11-12] The plea agreement did not explicitly reference "human trafficking."

As an initial matter, the Court notes that Defendant requests this Court to employ its inherent powers to "impose punitive sanctions [on Backpage] for abuse of the judicial process." [ECF No. 73 at 13]  However, the Supreme Court "has made clear that such a sanction, when imposed pursuant to civil procedures, must be compensatory, rather than punitive."  Haeger, 137 S. Ct. at 1186.  "[A] sanction counts as compensatory only if it is 'calibrate[d] to [the] damages caused by' the bad-faith acts on which it is based."  Id. (second and third alterations in original) (quoting International Union, United Mine Workers v. Bagwell, 512 U.S. 821, 834 (1994)).

"Like all applications of inherent power, the authority to sanction bad-faith litigation practices can be exercised only when necessary to preserve the authority of the court."  Schlafly v. Eagle Forum, No. 4:17-CV-283-JAR, 2018 WL 705061, at * 2 (E.D. Mo. Feb. 5, 2018) (citing Chambers, 501 U.S. at 64), appeal pending, No. 18-1620 (8th Cir. filed Mar. 22, 2018).  Despite the questionable nature of Backpage's complaint and motions for preliminary injunction, they did not undermine the integrity of the judiciary or interfere with the Court's ability to manage its own affairs.  Indeed, in less than five months, the Court abstained on Younger grounds, dismissed Backpage's complaint on that basis, and denied as moot Backpage's motions for preliminary injunction and to file an amended complaint.  Although Backpage appealed the dismissal to the Eighth Circuit, requiring Defendant to submit a response, the Eighth Circuit dismissed the appeal for failure to prosecute.  Given the procedural posture of the proceedings in this case and the forfeiture of Backpage's assets in the Arizona federal criminal case, the Court finds that Backpage's alleged bad faith does not warrant the imposition of civil sanctions under the circumstances.[11]  Cf. Dart, No. 1:15-CV-6340.[12]

---

[11]    In support of its argument that ordering sanctions would interfere with the Government's forfeiture proceedings, Backpage cites 21 U.S.C. § 853, which governs criminal forfeitures.  [ECF No. 87 at 4]  Section 853(c) provides:  "All right, title, and interest in property [subject to criminal forfeiture] vests in the United States upon the commission of the act giving rise to forfeiture under this section."  21 U.S.C. § 853(c).  See also United States v.

Furthermore, as a practical matter, the exercise of determining the appropriate amount of Defendant's attorney's fees and then ordering Backpage to pay those as sanctions when Backpage has no assets from which to pay the sanctions, is not a sensible use of judicial resources. See, e.g., Anderson v. Citimortgage, Inc., 519 Fed. Appx. 415 (8th Cir. 2013) (unpublished per curiam opinion) (the district court abused its discretion by imposing sanctions under its inherent authority without requiring the adversary's attorneys to file "affidavits and records . . . relating to the time spent on the [sanctionable motion to remand] and ma[king] findings of fact with respect to the attorneys' fees and costs incurred" due to the sanctionable conduct). Thus, "restraint and discretion" weigh against imposing civil sanctions on Backpage under the circumstances here.[13]

---

Trotter, 912 F.2d 964, 965 (8th Cir. 1990) (en banc) (per curiam) ("Once forfeiture is declared, the government's title relates back in time to the commission of the criminal act"). Section 853(k) further provides that, after the filing of an indictment or information alleging that the property is subject to forfeiture, "no party claiming an interest in property subject to forfeiture . . . may…commence an action at law or equity against the United States concerning the validity of his alleged interest in the property[.]" 21 U.S.C. § 853(k)(2).

In his reply brief, Defendant does not address what effect, if any, 21 U.S.C. § 853 has on his request for sanctions against Backpage. Because the Court denies Defendant's motion for sanctions against Backpage, the Court declines to address this issue.

[12] In Dart, the District Court for the Northern District of Illinois ordered Backpage to reimburse the defendant county sheriff for attorney fees it incurred defending Backpage's action for injunctive relief. No. 1:15-CV-6340, at *1 (N.D. Ill. Mar. 25, 2018) [ECF No. 109-1]. The Dart case and the instant action are procedurally and factually distinguishable.

There, Backpage sued the defendant to enjoin his efforts "to convince credit card companies not to do business with Backpage as long as it accepted" advertisements for prostitution and human trafficking. Id. Backpage alleged that the defendant "was threatening official action against the credit card companies and thereby imposing a prior restraint on Backpage's free speech rights." Id. The district court granted Backpage a temporary restraining order but, after an evidentiary hearing, denied a preliminary injunction. Id.; Backpage.com, LLC v. Dart, No. 15-C-06340, 2015 WL 12868237 (N.D. Ill. July 25, 2015); Backpage.com, LLC v. Dart, 127 F. Supp. 3d 919 (N.D. Ill. 2015). The Seventh Circuit reversed the denial of the preliminary injunction and directed entry of a preliminary injunction, 807 F.3d 229 (7th Cir. 2015); and the United States Supreme Court denied the defendant's petition for writ of certiorari, 137 S. Ct. 6 (2016). The district court in Dart entered the preliminary injunction and litigation continued until Backpage pleaded guilty to the federal conspiracy charges. Dart, No. 1:15-CV-6340, at *2-3 (N. D. Ill. Mar. 25, 2018).

[13] To the extent Defendant asks the Court to require Backpage to pay "the Clerk of this Court the costs associated with adjudicating its frivolous lawsuit" [ECF No. 73 at 15-16], Defendant has not identified such costs or provided authority for such an award. Defendant cites in support Haeger, 137 S. Ct. at 1188 ("If a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may .

Defendant also urges the Court to use its inherent or statutory[14] powers to "hold Backpage in criminal contempt and impose punitive sanctions for abuse of the judicial process." [ECF No. 73 at 13-15]  Specifically, Defendant seeks as criminal sanctions Backpage's payment of an unspecified amount "of penalties and fees . . . into a fund for restitution to human-trafficking victims" and an unspecified amount as "fines for criminal contempt." [ECF No. 73 at 13]  Defendant reasons that, given Backpage's financial situation, criminal sanctions are "most appropriate" because they "would serve general deterrence purposes" by "send[ing] a signal that courts will not tolerate flagrant abuses of the judicial process."  [Id. at 15]  Backpage counters that criminal sanctions are inappropriate "because [Defendant] has not shown that a lesser sanction of civil sanctions would not be equally effective as criminal sanctions." [ECF No. 87 at 3]  Furthermore, Backpage urges, criminal sanctions, like civil sanctions, would interfere with the government's forfeiture efforts.  [Id.]

---

. . make a blanket award").  In that case, however, the Supreme Court was only addressing the assessment of the adversary's attorney's fees and expenses as a sanction under a court's inherent authority, not the assessment of compensation to a court for its costs under the court's inherent authority.  Therefore, the Court declines to further consider such an award as a sanction against Backpage.

[14]  As statutory authority for holding Backpage in criminal contempt "for [its] 'disobedience or resistance to [the Court's] process,'" Defendant cites 18 U.S.C. § 402 ("Power of court") and § 402 ("Contempts constituting crimes").  [ECF No. 73 at 14]  Pursuant to 18 U.S.C. § 401, which governs the criminal contempt powers of the federal courts:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—
>
> > (1)  Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
> >
> > ....
> >
> > (3)  Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

See also Fed. R. Crim. P. 42(a) ("Any person who commits criminal contempt may be punished for that contempt after prosecution on notice").  The rest of Rule 42 sets forth the procedure for assessing criminal contempt, including provisions for notice, appointment of a prosecutor, trial and disposition, and summary disposition.  See Fed. R. Crim. P. 42(a)(1) through 42(b).

Criminal contempt "is designed to serve the limited purpose of vindicating the authority of the court." Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 800 (1987). "While a court has the authority to initiate a prosecution for criminal contempt, its exercise of that authority must be restrained by the principle that "only '[t]he least possible power adequate to the end proposed' should be used in contempt cases." Id. at 801 (quoting United States v. Wilson, 421 U.S. 309, 319 (1975)).

When a sanction has the "characteristics of a criminal penalty," the Eighth Circuit has noted that courts "require the procedural protections of a criminal trial" before imposing the sanction. Plaintiffs' Baycol Steering Comm. v. Bayer Corp., 419 F.3d 794, 808 (8th Cir. 2005); see also Bagwell, 512 U.S. at 826 (Because "[c]riminal contempt is a crime in the ordinary sense,…criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings."). Importantly, a court should "utilize[e] criminal sanctions only if the civil remedy is deemed inadequate." Young, 481 U.S. at 801.

Backpage's alleged misrepresentations to this Court, which were made in an arguable effort to impede Defendant's investigation into MMPA violations by Backpage, are a serious matter. However, the Court is mindful that "criminal contempt proceedings are time-consuming and expensive." United States v. McVeigh, 896 F. Supp. 1549, 1555 (W.D. Okl. 1995). Given that Backpage is already subject to a forfeiture order regarding all of its assets and a nationwide victims' fund is being established as a result of its guilty pleas, the request to hold criminal contempt proceedings in this closed case does not merit the substantial investment of the Court's and the litigants' valuable resources that such proceedings would entail. See id. at 1556 (the district court concluded, after deciding imposition of a civil contempt sanction would not be

effective, "that the utility of continuing criminal contempt proceedings in the[] circumstances [wa]s outweighed by the costs of so proceeding"). Under the circumstances, Defendant's motion for imposition on Backpage of civil sanctions under the Court's inherent authority and criminal contempt sanctions is denied.

### C. Rule 11 Sanctions

In the alternative, Defendant "moves for permission to expedite a motion under Rule 11" to seek sanctions against both Backpage and DWT. [ECF No. 73 at 24] Defendant acknowledges that he did not serve Backpage and DWT with a motion for Rule 11 sanctions and provide them 21 days to withdraw the sanctionable filing(s). [ECF No. 73 at 23-24] He argues, however, that, because this procedural requirement "would not serve the administration of justice here," the Court should either "decrease the safe-harbor period from 21 days to zero days, and… deem this a timely motion for sanctions under Rule 11" or "consider Rule 11 sanctions *sua sponte*[.]" [Id. at 24] Defendant urges, without citation to authority, that Rule 11 sanctions "can encompass all the forms of relief" he requests: "attorney's fees, a fee payable to the Clerk of the Court, criminal contempt, and a fee payable to a special fund for victims of Backpage in Missouri." [ECF No. 73 at 23]. DWT urges Defendant's request for Rule 11 sanctions contravenes the safe harbor provision in the Rule, is untimely, and is baseless. [ECF No. 90]

Rule 11 provides that by presenting a "pleading written motion, or other paper" to the Court the litigant or the litigant's attorney certifies in relevant part "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the material is not presented for any improper purpose, the material contains claims, defenses, or contentions warranted by existing law or a nonfrivolous argument to change existing law, and "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(1)-

11(b)(3).  See Adams v. USAA Cas. Ins. Co., 863 F.3d 1069, 1077 (8th Cir. 2017) ("Rule 11 imposes a duty on [a litigant or the litigant's attorney] to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose" (internal quotation marks and citation omitted)).  After notice and an opportunity to respond, a court may impose an appropriate sanction on any attorney, law firm, or party that violates or is responsible for a violation of Rule 11(b).  Fed. R. Civ. P. 11(c)(1).  The sanctions permitted by Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," and may include "nonmonetary directives," "an order to pay a penalty into court" and, in specific situations, an award of attorney's fees and expenses to the movant.  Fed. R. Civ. P. 11(c)(4).

Importantly, Rule 11 has a "safe harbor" provision requiring a litigant seeking Rule 11 sanctions to make the motion "separately from any other motion," serve it (without filing it in court) on the allegedly offending person, and allow 21 days after service of the motion for the withdrawal or correction of the offending paper, before filing the motion with the court.  Fed. R. Civ. P. 11(c)(2).  A district court abuses its discretion if it awards Rule 11 sanctions based on a motion that does not comply with the safe harbor provision in that the motion "was not made separately from other motions or requests and [the moving party] did not serve a prepared motion on [the party to be sanctioned 21 days] prior to making any request [for Rule 11 sanctions] to the court."  Gordon v. Unifund CCR Partners, 345 F.3d 1028, 1030 (8th Cir. 2003).  In Gordon the Eighth Circuit reversed the district court's award of Rule 11 sanctions as made "in contravention of the explicit procedural requirements of Rule 11."  Id.

Without addressing <u>Gordon</u>, which was cited by DWT [ECF No. 90 at 23], Defendant argues that "abiding by [the safe harbor provision] would not serve the administration of justice here [in that] Backpage and its counsel can no longer . . . withdraw their . . . filings, because the case is closed and Backpage's counsel [responsible for the filings] have withdrawn." [ECF No. 73 at 24; ECF No. 96 at 19-20] In support of his position that he need not comply with the safe harbor provision, Defendant quotes <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 398 (1990): "Even if [Backpage] quickly dismisses the action, the harm triggering Rule 11's concerns has already occurred."

While the quotation from <u>Cooter & Gell</u> appears to support consideration of Rule 11 sanctions in the absence of compliance with the Rule's safe harbor provision, that decision was issued prior to the 1993 amendment of Rule 11 that added the safe harbor provision. Defendant has not provided authority for considering Rule 11 sanctions absent compliance with the safe harbor provision. The Court denies Defendant's request for Rule 11 sanctions due to his non-compliance with the safe harbor provision of Rule 11. <u>Hawkeye-Security Ins. Co. v. Bunch</u>, 4:08CV01071 ERW, 2009 WL 4430860, at *5-6 (E.D. Mo. Nov. 24, 2009) (denying a motion for Rule 11 sanctions for failure to fully comply with Rule 11's procedural requirements, despite the fact movant's counsel "took significant steps to follow the required procedures for filing the motion"); <u>accord</u> <u>Caranchini v. Peck</u>, No. 4:19-CV-00030-DGK, 2019 WL 1325927, at *4 (W.D. Mo. Mar. 25, 2019) (denying a motion for sanctions for failure to comply with "Rule 11's procedural requirements for filing"); <u>Lancaster v. Board of Police Comm'rs</u>, No. 14-00171-CV-W-BP, 2017 WL 12884706 (W.D. Mo. July 1, 2014) (denying a request for Rule 11 sanctions set forth in a surreply because the litigant "failed to comply with Rule 11's procedural requirements in that her request for sanctions was not made in a separate motion"); <u>Fruehauf de Mexico, S.A.</u>

de C.V. v. Wabash Nat'l Corp., 4:11MC281 RWS, No. 2012 WL 1405778, at *2 (E.D. Mo. Apr. 23, 2012) (denying a motion for Rule 11 sanctions filed by a litigant that did not "strictly follow Rule 11's procedural requirements").

Additionally, it is not clear that a litigant may file a motion for Rule 11 sanctions after dismissal of a lawsuit in light of the safe harbor provision. As the Eastern District of Missouri has found:

> The safe harbor provision of Rule 11 "functions as a practical time limit" for the filing of a motion for sanctions, as such motions "have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission." In re Pennie & Edmunds, LLC, 323 F.3d 86, 89 (2d Cir. 2003) [(citing two other circuits' decisions)]. Courts have uniformly denied Rule 11 motions where, as here, a motion was not filed until after the case was dismissed. See Roth v. Green, 466 F.3d 1179, 1193 (10th Cir. 2006) (motions for Rule 11 sanctions filed after district court dismissed complaint should have been denied; citing cases from four other circuits); VanDanacker[ v. Main Motor Sales Co.,] 109 F. Supp. 2d [1045,] 1054 [(D. Minn. 2000)].

Noonan v. CACH, LLC, No. 4:15-CV-1305-CAS, 2016 WL 1641405, at *3 (E.D. Mo. Apr. 26, 2016). In characterizing Defendant's post-dismissal request for Rule 11 sanctions as untimely, the Court notes that materials Defendant relies on in support of his request for sanctions under Rule 11 were available to Defendant prior to the filing of the lawsuit and prior to dismissal of the lawsuit. Nevertheless, Defendant waited until after this Court dismissed the case, in response to Defendant's motion to dismiss, and after the Eighth Circuit dismissed the appeal, to seek Rule 11 sanctions. Defendant has not explained his reason for delaying the filing of his request for sanctions.

In addition to asking this Court to consider his post-dismissal motion for sanctions as a post-dismissal motion for Rule 11 sanctions, Defendant asks the Court to impose Rule 11

sanctions on its own. [ECF No. 73 at 24]. Rule 11(c)(3) provides that a court may impose sanctions "on its own" after issuing a show cause order.

To the extent Defendant asks the Court for sanctions under Rule 11(c)(3), Defendant cites no authority for such a Court action in response to a litigant's request. Nor has Defendant addressed the standard the Court must use to impose sanctions <u>sua</u> <u>sponte</u> under Rule 11(c)(3), a matter not yet resolved by the Eighth Circuit. <u>See</u>, <u>e.g.</u>, <u>Clark</u>, 460 F.3d at 1010. In addition, Defendant has not provided authority for the sanctions it seeks under Rule 11(c)(3). Defendant's request for an award of attorney's fees lacks merit under the terms of the Rule. Fed. R. Civ. P. 11(c)(4) (allowing "an order directing payment <u>to the movant</u> of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation" when a Rule 11 sanction is "warranted for effective deterrence" (emphasis added)); <u>Willhite</u>, 459 F.3d at 870 ("[i]t is not permissible to award attorneys' fees under Rule 11 when sanctions are imposed <u>sua</u> <u>sponte</u>"); <u>Norsyn, Inc. v. Desai</u>, 351 F.3d 825, 831 (8th Cir. 2003) (reversing an award of attorney's fees and costs as Rule 11 sanctions as an abuse of discretion upon concluding that, in the absence of a motion for sanctions, the defendants "were entitled to no monetary reward whatsoever"). Without more authority for Defendant's suggestion that the Court award Rule 11 sanctions "on its own," the Court declines to do so under the circumstances.[15]

### D. Discovery

Defendant, for the first time in his reply, asks the Court to order discovery "to probe whether Backpage's attorneys knew or should have known that their lawsuit was based on false representations." [ECF No. 96 at 20] More specifically, Defendant contends, "if the Court is not inclined to impose sanctions on [DWT] outright, it should order discovery and permit

---

[15] Because the Court denies Defendant's motion for sanctions, the Court also denies Defendant's request for an order "permitting supplemental briefing on the amount of sanctions." [ECF No. 73 at 25]

[Defendant] to investigate what [DWT] knew or should have known about Backpage's criminal conduct, and when they knew it." Id. at 22. DWT opposes the discovery request as not supported by extraordinary circumstances, as required for sanctions under Rule 11, relying on cases citing the 1983 amendment to Rule 11. [ECF No. 102]

Only one of the cases Defendant cited in support of his discovery request is a request for discovery pertaining to sanctions in a closed civil case: A.B.S. v. Board of Police Comm'rs, No. 4:12cv00202 JCH, mot to reopen case, for sanctions, and for order to show cause (in a previously settled wrongful death action), filed Dec. 1, 2017 [ECF No. 104] and orders providing for discovery related to the motion, filed Apr. 9, 2018 [ECF No. 140] and July 2, 2018 [ECF No. 149] (E.D. Mo.). The motion to reopen in A.B.S. focused on an allegation the Missouri Attorney General's Office improperly withheld DNA reports during discovery in the course of the original lawsuit's proceedings. See ECF No. 104 in A.B.S. The Missouri Attorney General's Office had released an investigative report confirming that it was aware of and failed to turn over the DNA reports during discovery. See attachments to ECF No. 104 in A.B.S. The issues presented by the motion to reopen were settled without disposition of the motion, and the parameters of the permitted discovery in that case are not clear. See, e.g., id. Oct. 16, 2018 Notice of settlement [ECF No. 194]. Here, unlike in A.B.S., the record does not support the conclusion that DWT engaged in inappropriate conduct during the course of the proceedings before this Court.

Defendant also relies on Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726 (8th Cir. 2002) and Cascone v. Niles Home for Children, 897 F. Supp. 1263, 1267 (W.D. Mo. 1995). Both permitted allowed depositions of attorneys regarding their own conduct prior to litigation to assist with pending litigation. In Pamida, Inc., the Eighth Circuit concluded that the deposition of an adversary's counsel about "information regarding [a] concluded patent infringement case"

was both "the most expedient approach" and "the only realistically available approach" to obtaining information needed in the pending lawsuit. Pamida, Inc., 281 F.3d at 730-31. In Cascone, a race-discrimination-in-employment case, the plaintiff presented an issue about whether she was advised how to handle garnishments for the employer, or criticized for her handling of garnishments, before she was terminated for failing properly to handle garnishments. Cascone, 897 F. Supp. at 1264-65. Finding the plaintiff sought information about the attorney's own pre-litigation actions with respect to garnishment processing for the employer, the trial court allowed a limited deposition of the attorney. Id. Because here there is no pending lawsuit that discovery might potentially assist, the Court does not consider Pamida, Inc. and Cascone supportive of Defendant's discovery request.[16]

DWT suggests that extraordinary circumstances are a requirement of sanction-related discovery. The Advisory Committee Notes for the 1983 amendment to Rule 11 provide that:

> To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of sanction proceedings to the record. Thus, discovery should be conducted . . . only in extraordinary circumstances.

See also In re Central Ice Cream Co., No. 85C10073, 1986 WL 13635 (N. D. Ill. Nov. 21, 1986) (quoting the notes for the 1983 amendment to Rule 11 with respect to a motion for sanctions under Rule 11). The Court finds the Advisory Committee Notes persuasive. Defendant has not demonstrated extraordinary circumstances supporting discovery related to DWT with respect to Defendant's motion for sanctions. Under the circumstances, Defendant's request for discovery is denied.

---

[16] Defendant also cites another case in support of his position that DWT should be deposed as to its pre-filing knowledge: Brown v. Hart, Schaffner & Marx, 96 F.R.D. 64, 67 (N.D. Ill. 1982). The Brown case was a shareholder derivative action subject to Rule 23.1's requirement that complaints be verified to avoid "strike suits." Brown, 96 F.R.D. at 66-67. The discovery of the plaintiff's attorneys was sought after plaintiff was deposed and appeared not to have an idea of the basis of her claims. Id. at 66. Therefore, the Brown case is distinguishable.

Accordingly,

**IT IS HEREBY ORDERED** that Eric Schmitt, Missouri's current Attorney General, is **SUBSTITUTED** for the originally named Defendant, Josh Hawley, who was Missouri's Attorney General when this lawsuit was filed.

**IT IS FURTHER ORDERED** that Defendant's "motion for Criminal Contempt and Civil Sanctions against Backpage.com, LLC" and DWT [ECF No. 73] is **DENIED**.

**IT IS FINALLY ORDERED** that Defendant's request for discovery [ECF No. 96 at 20-22] is **DENIED**.

_Patricia L. Cohen_
_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of May, 2019